527 S.E.2d 113

**Carolyn J. McCRAW, Respondent,**

v.

**MARY BLACK HOSPITAL, Employer, and
PHT Services, Ltd., Appellants.**

**No. 3059.**

Court of Appeals of South Carolina.

Heard June 10, 1999.
Decided Oct. 18, 1999.
Refiled Jan. 17, 2000.

David Hill Keller, of Haynsworth, Marion, McKay & Guerard, of Greenville, for appellants.

Danny R. Smith, of Spartanburg; and Deborah R.J. Shupe, of Louthian & Louthian, of Columbia, for respondent.

## ORDER WITHDRAWING ORIGINAL OPINION AND SUBSTITUTING SUBSEQUENT OPINION, AND DENYING PETITION FOR REHEARING

### PER CURIAM:

After careful consideration of the Petition for Rehearing, the Court is unable to discover any material fact or principle of law that has been either overlooked or disregarded and, hence, there is no basis for rehearing. It is, therefore, ordered that the Petition for Rehearing be denied. However, Opinion No. 3059, filed October 18, 1999, is withdrawn and the attached opinion is substituted therefor.

In the Discussion of the original opinion, third full paragraph, sixth sentence, it states as follows: "McCraw knew in 1991 that her symptoms were related to the chemicals in the endoscopy unit, but there is no evidence that any physician had *conclusively* determined that her exposure to the chemicals had triggered the progression of her pulmonary disease, much less notified McCraw of that fact." We now substitute the word "definitively" in place of the word "conclusively" in the attached opinion.

### HOWARD, Judge:

In this workers' compensation case, Mary Black Memorial Hospital (the hospital) appeals a circuit court order which awarded benefits to Carolyn J. McCraw, reversing the full commission's finding that she had failed to file her claim within the two year statute of limitations period. We affirm in part, reverse in part, and remand.

### BACKGROUND

McCraw worked continuously for the hospital from 1961 until November of 1992. From 1986 to September, 1991 she worked as an assistant in the endoscopy unit, where her duties included cleaning and disinfecting equipment with cleaners containing Glutaraldehyde, a respiratory irritant.[1] The cleaners burned McCraw's eyes and irritated her throat, causing

---

1. Testimony conflicts over whether Cidex or Metracide was used to clean the instruments. Both chemicals, however, contain the respiratory irritant Glutaraldehyde.

chest tightness, congestion, wheezing, choking, and coughing. Initially, her symptoms resolved when she left work at the end of the day, but by the time she left her employment, McCraw's symptoms remained even after leaving work each day.

In 1990, McCraw was treated by Dr. Mary Lou Applebaum on one occasion for sinusitis.[2] Dr. Applebaum is a pulmonary specialist who is the director of the respiratory center at the hospital. Dr. Applebaum also worked with McCraw in the endoscopy unit and observed her breathing difficulties while working with the chemicals. By September of 1991, McCraw realized her respiratory symptoms were related to her exposure to the chemicals. When she saw Dr. Applebaum in the endoscopy unit, she asked Dr. Applebaum if it would help for her to leave the endoscopy unit. Dr. Applebaum responded that she "certainly thought it was worth a try." In September 1991, McCraw transferred out of the endoscopy unit and was ultimately placed in the child care center of the hospital.

McCraw began seeing Dr. Applebaum again as a patient on March 30, 1992. In July 1992, Dr. Applebaum treated McCraw for asthmatic bronchitis. On October 30, 1992, Dr. Applebaum reported that McCraw continued to suffer from sinusitis and bronchitis. Dr. Applebaum testified McCraw's allergies predisposed her to these types of infections.

On November 13, 1992, McCraw again complained to Dr. Applebaum of congestion and shortness of breath. Dr. Applebaum told McCraw to stop working and admitted McCraw to the hospital on November 19, 1992, for treatment of pneumonia and asthma. With in-patient care, the pneumonia cleared up, but the asthma remained. McCraw left the hospital on November 22, 1992, but did not return to work. She submitted a long term disability claim to the hospital on January 12, 1993, in which she stated her condition was related to her employment.

Dr. Applebaum testified that McCraw initially had a stable asthmatic condition which was mild in degree and allowed her to work on a regular basis, but the chemical exposure triggered a severe progression of the disease which was not

---

**2.** According to Dr. Applebaum, sinusitis is a medical term to describe infection of the sinus cavity, though it is also used to report inflammation of the sinus cavities.

reversible upon leaving that environment. To a reasonable degree of medical certainty, Dr. Applebaum believed McCraw's exposure to chemicals in the endoscopy unit and her work in the hospital's child care center exacerbated McCraw's underlying condition to the point McCraw is unable to maintain employment.

On November 14, 1994, McCraw filed a form 50 claiming total disability and seeking benefits from exposure to chemicals within the scope of her employment. The hospital denied McCraw's claims. The hearing commissioner awarded McCraw benefits finding she sustained a compensable occupational respiratory disease brought within the applicable statute of limitations. The full commission reversed the hearing commissioner finding Dr. Applebaum diagnosed McCraw with lung disease in 1991 but McCraw failed to file a workers' compensation claim within two years of receiving notice of the definitive diagnosis.

The circuit court reversed the full commission finding the two-year filing period commenced only after the claimant was given notice of a definitive diagnosis *and* became totally disabled. The circuit court found McCraw complied with the statute of limitations and remanded the matter to the full commission for disposition and payment of benefits. The circuit court subsequently denied the hospital's motion to alter or amend judgment and found the hospital's additional sustaining grounds were not preserved and were meritless. The hospital appeals, contending McCraw failed to comply with the applicable statute of limitations and failed to report the alleged injury to the hospital within the statutorily defined time period.

## STANDARD OF REVIEW

In reviewing a Workers' Compensation Commission's decision, an appellate court must affirm the Commission's factual findings if they are supported by substantial evidence and not controlled by legal error. *Tiller v. National Health Care Center,* 334 S.C. 333, 513 S.E.2d 843 (1999). "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached."

*Tiller,* 334 S.C. at 338, 513 S.E.2d at 845 (citing *Grayson v. Carter Rhoad Furniture,* 317 S.C. 306, 454 S.E.2d 320 (1995)).

 "An appellate court may not substitute its judgment for that of an agency as to the weight of the evidence ·on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the record." *Tiller,* 334 S.C. at 339, 513 S.E.2d at 845. "The statute of limitations applicable to workers' compensation claims, like the Workers' Compensation Act as a whole, should be given liberal construction, and any reasonable doubts should be resolved in favor of coverage." *Rogers v. Spartanburg Regional Medical Ctr.,* 328 S.C. 415, 418, 491 S.E.2d 708, 710 (Ct.App.1997) (citations omitted).

## DISCUSSION

██ The hospital contends South Carolina Code section 42–15–40 bars McCraw's occupational disease claim. We disagree.

Section 42–15–40 provides in pertinent part:

The right to compensation under this title is barred unless a claim is filed with the commission within two years after an accident, or if death resulted from accident, within two years of the date of death. *However, for occupational disease claims the two-year period does not begin to run until the employee concerned has been diagnosed definitively as having an occupational disease and has been notified of the diagnosis.*

S.C.Code Ann. § 42–15–40 (Supp.1998) (emphasis added).

The full commission found as a fact that Dr. Applebaum definitively diagnosed McCraw with lung disease, categorized as occupational asthma, in 1991. The circuit court reversed on the grounds that the statute of limitations did not begin to run until McCraw had been notified of a definitive diagnosis and suffered total disability, citing *Bailey v. Covil Corp.,* 291 S.C. 417, 354 S.E.2d 35 (1987) as its authority. Although we disagree with the circuit court's interpretation of *Bailey,* we conclude the full commission's finding was clearly erroneous in view of the substantial evidence in the record. Consequently, we affirm. *See Brading v. County of Georgetown,* 327 S.C.

107, 490 S.E.2d 4 (1997) (appellate court may affirm for any reason appearing in the record).

In 1991, Dr. Applebaum only spoke with McCraw about her illness when they worked together in the endoscopy unit. Dr. Applebaum did not treat McCraw as a patient, aside from her treatment in 1990 for sinusitis, until March 30, 1992. Even then, Dr. Applebaum did not diagnose McCraw with occupational asthma. There is simply no evidence Dr. Applebaum formally evaluated, let alone definitively diagnosed, McCraw with an occupational disease in 1991. Although Dr. Applebaum testified she could hear McCraw wheezing, she did not examine McCraw, test her, diagnose her, or treat her in 1991. McCraw knew in 1991 that her symptoms were related to the chemicals in the endoscopy unit, but there is no evidence that any physician had definitively determined that her exposure to the chemicals had triggered the progression of her pulmonary disease, much less notified McCraw of that fact. The confirmation that chemicals in the work environment should be avoided and were potentially related to breathing difficulties, even though relayed to the claimant by a qualified physician, do not under any view of the evidence constitute a definitive diagnosis of an occupational disease as contemplated by the statute. *Rogers*, 328 S.C. at 418, 491 S.E.2d at 710 ("The statute of limitations applicable to workers' compensation claims, like the Workers' Compensation Act as a whole, should be given liberal construction, and any reasonable doubts should be resolved in favor of coverage.").

The first plausible date supporting an argument Dr. Applebaum definitively diagnosed McCraw with an occupational disease occurred on November 19, 1992, when Dr. Applebaum took McCraw out of work and admitted her to the hospital. Even if we conclude this event amounted to a definitive diagnosis, McCraw applied for benefits on November 14, 1994, within two years of the designated definitive diagnosis.

It is questionable McCraw even suffered a compensable injury in 1991. The Workers' Compensation Act (the Act) outlines specific guidelines for pulmonary diseases stating:

No compensation shall be payable for any pulmonary disease arising out of the inhalation of organic or inorganic dust or fumes *unless the claimant suffers disability* as

described in § 42–9–10 or § 42–9–20 and shall not be compensable under § 42–9–30; *provided*, however, in claims based on byssinosis the claimant must have been exposed to dust in his employment for a period of at least seven years.

S.C.Code Ann. § 42–11–60 (1985) (first emphasis added).

Sections 42–9–10 and 42–9–20 set forth the amount of compensation for total and partial disabilities. S.C.Code Ann. § 42–9–10 (Supp.1998); S.C.Code Ann. § 42–9–20 (1985). The Act defines disability as follows:

As used in this chapter, *"disablement"* means the event of an employee's becoming *actually incapacitated*, partially or totally, because of an occupational disease, *from performing his work in the last occupation* in which injuriously exposed to the hazards of such disease, *"partial disability"* means the physical inability to continue work in such occupation only and *"total disability"* means the physical inability to perform work in any occupation. The disablement and disability of an employee from an occupational disease shall be determined as provided in this chapter.

S.C.Code Ann. § 42–11–20 (1985) (italics in original; underline added).

Not until November 1992 did McCraw become incapable of performing her functions as a nursing assistant. Accordingly, McCraw did not suffer a disability as defined under the Act until November 1992 and could not have brought a claim until then. *See* S.C.Code Ann. § 42–11–60 (1985) ("No compensation shall be payable for any pulmonary disease . . . unless the claimant suffers disability. . . ."); *See also Mauldin v. Dyna–Color/Jack Rabbit*, 308 S.C. 18, 416 S.E.2d 639, 640 (1992) (two-year limitation period provided in Section 42–15–40 runs from the date claimant discovered the compensable injury); *Bailey v. Covil Corp.* 291 S.C. 417, 419, 354 S.E.2d 35, 36 (1987) ("A claim for total disability benefits arising from an occupational disease must be filed within two years after the claimant has received *notice* of a *definitive diagnosis* of the disease *and has become totally disabled.*") (citations omitted) (emphasis added).

The hospital contends the circuit court incorrectly imposed a requirement of total disability as a precursor to triggering the two year statute under *Bailey*, arguing *Bailey* conflicts

with *Goff v. Mills,* 279 S.C. 382, 308 S.E.2d 778 (1983) and S.C.Code Ann. section 42–15–40 (Supp.1998). Although we agree with the hospital that total disability is not required to trigger the two year statute, we disagree that *Bailey* is inconsistent with *Goff* and section 42–15–40.

Section 42–15–40 provides in pertinent part: "[F]or occupational disease claims the two-year period does not begin to run until the employee concerned has been *diagnosed definitively* as having an occupational disease *and* has been *notified* of the diagnosis." S.C.Code Ann. § 42–15–40 (Supp.1985) (emphasis added). In *Goff,* our supreme court recognized, in dicta, that section 42–15–40 legislatively established the beginning date of the statute of limitations period (definitive diagnosis and notification) and supplanted the judicially established test first enunciated in *Drake v. Raybestos–Manhattan, Inc.,* 241 S.C. 116, 127 S.E.2d 288 (1962). *Drake* was decided at a time when § 42–15–40 required total disability from an occupational pulmonary disease as a condition for compensation. The *Drake* court held the limitations period began to run when the disease culminated in *total disability* and when by reasonable diligence the *claimant could have discovered* that his condition was a compensable case. *Drake,* 241 S.C. at 122–3, 127 S.E.2d at 291–2 (1962) (emphasis added).

After *Goff,* our supreme court held in *Bailey:* "A claim for total disability benefits arising from an occupational disease must be filed within two years after the claimant has received *notice* of a *definitive diagnosis* of the disease *and has become totally disabled."* *Bailey,* 291 S.C. at 419, 354 S.E.2d at 36 (emphasis added) (citations omitted). The hospital contends this rule for determining the beginning of the limitations period is irreconcilable with the Act as amended in 1978 and the holding in *Goff.* As we read *Bailey,* it states the rule in the context of total disability, not because pre–1978 law was applied, but because the claim in that case was for total disability. Had the Court dealt with a partial disability claim, we believe the above quote would have employed the phrase 'partial disability' instead of 'total disability.' In our view, *Bailey* is thus easily reconciled with *Goff* and the Act when read in conjunction with section 42–11–60 and *Mauldin.*

As discussed above, the Act requires a compensable disability to bring an occupational disease claim. *See* S.C.Code Ann. § 42–11–60 (1985). By amendment in 1978, the requirement of total disability from occupational pulmonary disease as a condition of compensation was removed, and partial disability became compensable. Under section 42–11–60, no compensation is payable unless a claimant suffers some disability. Under *Mauldin*, the statute of limitations does not begin to run until the claimant discovers a compensable injury. Accordingly, we conclude that *Bailey* provides the consistent rule that the two year statute of limitations begins to run for an occupational disease when the claimant receives notice of a definitively diagnosed occupational disease and suffers some compensable injury, that is, some disability.

The hospital's final argument is that McCraw failed to file notice of the injury within 90 days as required by S.C.Code Ann. § 42–15–20 (1985). This argument is intertwined with the first issue, which we have decided adversely to the hospital. The hospital asserts that McCraw was required to report her injury within 90 days of her discovery of occupational asthma in 1991. We have determined that the record does not support a finding of notice of definitive diagnosis and disability from occupational pulmonary disease prior to November 19, 1992. The commissioner's finding that McCraw gave the hospital notice as required by § 42–15–20 on January 6, 1993 is not appealed, and is the law of the case. *Brading v. County of Georgetown*, 327 S.C. 107, 490 S.E.2d 4 (1997). Therefore, McCraw gave notice within the statutorily outlined ninety day period. *Hanks v. Blair Mills, Inc.*, 286 S.C. 378, 381, 335 S.E.2d 91, 93 (Ct.App.1985) (noting section 42–15–20 "provides no specific method of giving notice").

Accordingly, we affirm the circuit court's reversal of the full commission's determination that McCraw failed to comply with the statute of limitations. However, the circuit court erred in remanding the case to the full commission for disposition and payment of benefits. Though the single commissioner found McCraw to have a compensable claim, the full commission never reached the merits of McCraw's claim. The full commission is the ultimate fact finder and it is the sole responsibility of the commission to determine the compensa-

bility of McCraw's claim. *See Fox v. Newberry County Memorial Hosp.*, 319 S.C. 278, 461 S.E.2d 392 (1995). We therefore reverse the circuit court's affirmance of the single commissioner's order on the merits and remand this matter to the Workers' Compensation Commission to hold proceedings on the merits of McCraw's claim.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

HOWELL, C.J., and HUFF, J., concur.