565 S.E.2d 286

**Carolyn J. McCRAW, Employee, Respondent,**

**v.**

**MARY BLACK HOSPITAL, Employer, and PHT Services, Ltd., Carrier, Petitioners.**

**No. 25480.**

Supreme Court of South Carolina.

Heard April 16, 2002.

Decided June 17, 2002.

230

David Hill Keller, of Haynsworth Sinkler Boyd, P.A., of Greenville, for petitioners.

Danny R. Smith, of Spartanburg, and Deborah R.J. Shupe, of Columbia, for respondent.

Justice WALLER.

In this workers' compensation case, we granted a writ of certiorari to review the Court of Appeals' opinion. *See McCraw v. Mary Black Hosp.*, 338 S.C. 478, 527 S.E.2d 113 (Ct.App.2000). We affirm in part, vacate in part, reverse in part, and remand.

## FACTS

Respondent Carolyn McCraw worked for petitioner Mary Black Hospital (the Hospital) as a nursing assistant from 1961 until November of 1992. From 1986 to September 1991, she worked in the endoscopy unit where her duties included assisting physicians, restocking the rooms, and disinfecting equipment. When disinfecting the endoscopes, McCraw used cleaners containing Glutaraldehyde, a chemical known to be a respiratory irritant. The cleaners burned McCraw's eyes, irritated her throat, and eventually caused chest tightness, congestion, wheezing, coughing, and breathing difficulty. Initially, her symptoms would abate when she left work, but by the time she left the endoscopy unit, McCraw's breathing problems continued when she was home.

Dr. Mary Lou Applebaum, a pulmonary specialist, worked with McCraw in the endoscopy unit and observed her breathing difficulties while working with the chemicals. Dr. Applebaum testified that she saw McCraw two or three times a week and McCraw consulted with her on an informal basis. Dr. Applebaum stated that during this time she was not seeing McCraw in the context of a doctor-patient relationship.[1] By 1991, McCraw realized her respiratory symptoms were related to her exposure to the chemicals and asked Dr. Applebaum if it would help for her to leave the endoscopy unit. Dr. Applebaum responded that she "certainly thought it was

---

1. However, Dr. Applebaum treated McCraw as a patient once in 1990 for sinusitis.

worth a try." In September 1991, McCraw transferred out of the endoscopy unit. Ultimately, McCraw was placed in the child care center of the hospital where she took care of employees' sick children. McCraw continued to have breathing problems and get respiratory infections after she left the endoscopy unit.

McCraw began seeing Dr. Applebaum regularly as a patient beginning in March 1992. From March to November 1992, Dr. Applebaum treated McCraw for asthmatic bronchitis, sinusitis and pneumonia. McCraw went for an office visit with Dr. Applebaum on November 19, 1992, and Dr. Applebaum told McCraw she had to stop work. That same day, McCraw was admitted to the hospital with diagnoses of asthma and pneumonia.

McCraw's last day of work at the Hospital was November 18, 1992. She submitted a long term disability claim to the Hospital, dated January 12, 1993, in which she stated her condition was related to her employment.[2] McCraw filed her workers' compensation claim on November 14, 1994.

At her deposition, Dr. Applebaum testified that exposure to Glutaraldehyde has been associated in medical literature with the development of occupational asthma. Dr. Applebaum stated that McCraw initially had a stable asthmatic condition which was mild in degree and allowed her to work on a regular basis, but the chemical exposure triggered a "severe progression" of the disease which was not reversible upon leaving that environment. To a reasonable degree of medical certainty, Dr. Applebaum believed McCraw's exposure to chemicals in the endoscopy unit and her work in the Hospital's child care center exacerbated McCraw's condition to the point McCraw is unable to maintain employment.

The Single Commissioner awarded McCraw benefits finding she sustained a compensable occupational respiratory disease, i.e., occupational asthma, caused by her exposure to Glutaraldehyde. The Commissioner found McCraw was permanently and totally disabled as of November 19, 1992. In addition, the Commissioner found that McCraw's claim met the notice and statute of limitations requirements. In a 2–1 decision, the

2. McCraw indicated that she was getting respiratory infections from the children in the child care center.

Full Commission reversed. The Commission made specific findings of fact that Dr. Applebaum diagnosed McCraw with lung disease, i.e., occupational asthma, in 1991 and that McCraw failed to file her claim within two years of receiving notice of this diagnosis.

The circuit court reversed the Commission's decision. Citing *Bailey v. Covil Corp.*, 291 S.C. 417, 354 S.E.2d 35 (1987), the circuit court found the statute of limitations for an occupational disease claim is triggered by definitive diagnosis *and* total disability. Since total disability did not occur until November 19, 1992, the circuit court held that the November 14, 1994, filing of McCraw's claim was timely.

The Court of Appeals affirmed the circuit court's decision on the statute of limitations, but relied upon different reasoning. The Court of Appeals held the Commission's finding that McCraw was definitively diagnosed in 1991 was unsupported by substantial evidence in the record. Specifically, the Court of Appeals stated the following:

There is simply no evidence Dr. Applebaum formally evaluated, let alone definitively diagnosed, McCraw with an occupational disease in 1991. Although Dr. Applebaum testified she could hear McCraw wheezing, she did not examine McCraw, test her, diagnose her, or treat her in 1991. McCraw knew in 1991 that her symptoms were related to the chemicals in the endoscopy unit, but there is no evidence that any physician had definitively determined that her exposure to the chemicals had triggered the progression of her pulmonary disease, much less notified McCraw of that fact. The confirmation that chemicals in the work environment should be avoided and were potentially related to breathing difficulties, even though relayed to the claimant by a qualified physician, do not under any view of the evidence constitute a definitive diagnosis of an occupational disease as contemplated by the statute . . . .

The first plausible date supporting an argument Dr. Applebaum definitively diagnosed McCraw with an occupational disease occurred on November 19, 1992, when Dr. Applebaum took McCraw out of work and admitted her to the hospital. Even if we conclude this event amounted to a definitive diagnosis, McCraw applied for benefits on Novem-

ber 14, 1994, within two years of the designated definitive diagnosis.

*McCraw*, 338 S.C. at 485, 527 S.E.2d at 116–17 (citation omitted).

Moreover, the Court of Appeals disagreed with the circuit court that *total* disability is required to trigger the statute of limitations. Instead, the Court of Appeals held that the statute of limitations "begins to run for an occupational disease when the claimant receives notice of a definitively diagnosed occupational disease and suffers some compensable injury, that is, some disability." *Id.* at 488, 527 S.E.2d at 118.

As to petitioners' argument that McCraw failed to give timely notice of her claim, the Court of Appeals found that the crucial date regarding notice also would be November 19, 1992. The court further decided petitioners had not appealed the Commissioner's finding that McCraw gave timely notice, and therefore, it is the law of the case. *Id.*

Finally, the Court of Appeals reversed the portion of the circuit court's order which remanded the case to the Commission with instructions to award McCraw benefits. The Court of Appeals held that the circuit court erred in this respect because the Commission, as the ultimate fact finder, had not yet reached the merits of McCraw's claim which petitioners had also challenged in their appeal to the Commission. Therefore, the Court of Appeals remanded to the Commission for additional proceedings. *Id.*

## ISSUES

1. Does the statute of limitations bar McCraw's claim?
2. Does the notice provision bar McCraw's claim?

## DISCUSSION

### 1. Statute of Limitations

Petitioners argue that the Court of Appeals improperly made "its own determination of facts" by finding that respondent had not been definitively diagnosed in 1991, contrary to the specific finding of the Commission. We disagree.

■ ˙ This Court must affirm the findings of fact made by the Commission if they are supported by substantial evidence. *E.g., Tiller v. National Health Care Ctr. of Sumter,* 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached. *Id.* The Court may reverse the decision if the administrative findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. *Id.;* S.C.Code Ann. § 1–23–380(A)(6) (Supp.2001).

The workers' compensation statute of limitations states in relevant part:

The right to compensation under this title is barred unless a claim is filed with the commission within two years after an accident, or if death resulted from accident, within two years of the date of death.ᐧ *However, for occupational disease claims the two-year period does not begin to run until the employee concerned has been diagnosed definitively as having an occupational disease and has been notified of the diagnosis.*

S.C.Code Ann. § 42–15–40 (Supp.2001) (emphasis added).

The Commission specifically found that Dr. Applebaum diagnosed McCraw in 1991. Petitioners argue that the evidence shows Dr. Applebaum diagnosed McCraw when she advised McCraw, during an informal conversation in the endoscopy unit, to leave the unit. Additionally, petitioners contend McCraw admitted she had been diagnosed because she testified that she knew in 1991 her asthma problems were related to her job.

■ We hold the Court of Appeals did not make its own factual findings, but instead, correctly determined that the Commission's finding was clearly erroneous and not supported by substantial evidence. The evidence established that Dr. Applebaum did not *definitively diagnose* McCraw while she worked in the endoscopy unit. Instead, the testimony clearly showed that these consultations were informal, undocumented, and not in the context of a doctor-patient relationship. Given that the statute of limitations requires that the employee be: (1) "diagnosed definitively as having an occupational disease,"

and (2) "notified of the diagnosis," the Court of Appeals properly reversed the Commission's finding that Dr. Applebaum diagnosed respondent in 1991. *McCraw,* 338 S.C. at 485, 527 S.E.2d at 116 ("The confirmation that chemicals in the work environment should be avoided and were potentially related to breathing difficulties, even though relayed to the claimant by a qualified physician, do not under any view of the evidence constitute a definitive diagnosis of an occupational disease as contemplated by the statute."). Considering the record as a whole, it simply is not reasonable to conclude that Dr. Applebaum's informal conversations with McCraw in the endoscopy unit constituted a definitive diagnosis, or that McCraw's understanding her asthma was affected by the workplace chemicals somehow constitutes notification of definitive diagnosis of an occupational disease. *See Tiller v. National Health Care Ctr. of Sumter,* 334 S.C. at 338, 513 S.E.2d at 845 (substantial evidence is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached).

■ Furthermore, we agree with the Court of Appeals that, based on the evidence in the record, the earliest possible date of definitive diagnosis occurred when McCraw was hospitalized on November 19, 1992; therefore, McCraw's November 14, 1994 filing for benefits was timely pursuant to § 42–15–40.

In its opinion, the Court of Appeals went on to discuss whether disability is required to trigger the statute of limitations. During this discussion, the Court of Appeals analyzed both workers' compensation statutes and applicable case law. *McCraw,* 338 S.C. at 485–88, 527 S.E.2d at 117–18. Petitioners maintain the Court of Appeals erred in holding that disability is a requirement of the statute of limitations.

The Court of Appeals' analysis of this issue was unnecessary given its dispositive holding that definitive diagnosis did not occur until November 19, 1992, at the earliest. In light of our decision affirming this holding, we decline to address petitioners' argument and vacate that portion of the Court of Appeals' opinion addressing this issue.

## 2. Notice

■ The Court of Appeals held petitioners failed to appeal the Commissioner's finding that McCraw gave timely notice of

her claim to the Hospital, and therefore, it is the law of the case. Petitioners argue this was error. We agree.

Pursuant to S.C.Code Ann. § 42–15–20 (1985), notice to the employer must be given within 90 days after the occurrence of the accident upon which the employee is basing her claim. The Commissioner found that McCraw provided timely notice to the Hospital via a long term disability form filed on or about January 12, 1993. In their appeal to the Commission, petitioners alleged the Commissioner erred in finding that McCraw's claim was timely reported pursuant to section 42–15–20. The Commission, however, did not reach this claim because its decision rested solely on the statute of limitations issue. When McCraw appealed to the circuit court and when petitioners appealed to the Court of Appeals, petitioners continued to assert the notice issue. Accordingly, the Court of Appeals clearly erred in finding petitioners had not appealed this issue.

In addition, petitioners continue to assert that McCraw knew she had an occupational disease in 1991, and therefore, she failed to give timely notice. However, as noted by the Court of Appeals, the record simply does not support a date for triggering notice earlier than November 19, 1992. Because McCraw filed the long term disability form in January 1993, there appears to be no merit to petitioners' argument. Nonetheless, we find that this issue has yet to be addressed by the Commission, and therefore it is remanded, along with the other issues raised by petitioners but not yet considered by the Commission. *See Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995) ("The duty to determine facts is placed solely on the Commission and the court reviewing the decision of the Commission has no authority to determine factual issues but must remand the matter to the Commission for further proceedings."); *Ross v. American Red Cross*, 298 S.C. 490, 492, 381 S.E.2d 728, 730 (1989) ("the Full Commission, as the ultimate fact-finder, may make its own findings, adverse to those of the Single Commissioner").

## CONCLUSION

The Court of Appeals' decision that the statute of limitations does not bar McCraw's claim because definitive diagnosis

occurred, at the earliest, on November 19, 1992, is affirmed. We vacate the portion of the opinion which further discusses the statute of limitations issue. Finally, we reverse on the notice issue, and remand to the Commission for further proceedings.

**AFFIRMED IN PART; VACATED IN PART; REVERSED IN PART; and REMANDED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.