576 S.E.2d 150

**GERMAN EVANGELICAL LUTHERAN CHURCH OF CHARLESTON, S.C. (Commonly Known as St. Matthew's Lutheran Church), Appellant,**

**v.**

**CITY OF CHARLESTON, Respondent.**

**No. 25579.**

Supreme Court of South Carolina.

Heard Oct. 9, 2002.

Decided Jan. 13, 2003.

Rehearing Denied Feb. 20, 2003.

Kerry W. Koon, of Charleston, for Appellant.

William B. Regan, Carl W. Stent, and Frances I. Cantwell, of Regan, Cantwell & Stent, all of Charleston, for Respondent.

Justice WALLER:

At issue in this case is whether four tax-exempt properties owned by Appellant,[1] German Evangelical Lutheran Church of Charleston (a/k/a St. Matthew's Lutheran Church), located on King Street, are subject to an assessment which was adopted by the Charleston City Council pursuant to the Municipal Improvement Act of 1999, S.C.Code Ann. § 5–37–10 et seq.

---

1. The properties include the church and Sunday school building, a community outreach center, a parking lot for employees, and a building the Church hopes to turn into a parking facility.

(Supp. 2001). The circuit court ruled the Church was properly subjected to the assessment. We affirm.

## FACTS

In August 1999, Charleston City Council adopted a resolution creating the King Street Streetscape Improvement District (District), the purpose of which was to raise money by assessment to property owners on King Street for improvements such as the undergrounding of utilities, planting trees, new street lights, repaving King Street, installation of granite curves with handicap accessibility and special bluestone sidewalks. Council adopted the resolution pursuant to S.C.Code Ann. § 5–37–40(B), which allows council to adopt a resolution "upon written petition signed by a majority . . . of the owners of real property within the district which is not exempt from ad valorem taxation as provided by law."[2] The ordinance adopting the resolution was ratified on Dec. 7, 1999.

The Church, being a tax-exempt property, did not participate in the petition method.[3] It was, however, given notice and appeared at two public hearings. It also filed a written objection. The resolution was ultimately adopted by City Council, and the Church was assessed a total of $5917.62 per year for a ten year period.[4] It filed this complaint challenging the assessment contending, *inter alia*, the Municipal Improvement Act evidences a Legislative intent that tax-exempt properties not be subject to assessments, and that it had been denied equal protection and due process in not being allowed

---

**2.** Alternatively, a majority of council may implement an improvement district without the consent of a majority of property owners. Section 5–37–40(B).

**3.** There is some testimony in the record that even tax-exempt properties were sent copies of the petitions. However, counsel for the Church denied having received a copy of the petition.

**4.** The assessment is based upon a formula: 50% based on the assessed value of the properties, and 50% based on linear footage. Since Church properties have no assessment value for tax purposes, the Church's assessment is generally less than that of non-tax exempt properties.

to participate in the petition process. The circuit court rejected Church's claims, and upheld City's assessment.[5]

## ISSUE

May the City of Charleston impose an assessment on Church's tax-exempt properties pursuant to the Municipal Improvement Act, S.C.Code Ann. § 5–37–10 et seq.?

## DISCUSSION

The Municipal Improvement Act of 1999(Act)[6] authorizes municipal governing bodies to establish improvement districts and create an "improvement plan" for purposes of preserving property values, preventing deterioration of urban areas, and preserving the tax base of the municipality. S.C.Code Ann. § 5–37–20. It is authorized to finance such improvement plans by the imposition of assessments in accordance with the Act, or by issuance of various sorts of bonds, or any combination thereof. S.C.Code § 5–37–30. Pursuant to section 5–37–40(A) & (B) of the Act, a municipality may create an improvement district, as follows:

(A) If the governing body finds that:

(1) improvements would be beneficial within a designated improvement district;

(2) the improvements would preserve or increase property values within the district;

(3) in the absence of the improvements, property values within the area would be likely to depreciate, or that the proposed improvements would be likely to encourage development in the improvement district;

(4) the general welfare and tax base of the city would be maintained or likely improved by creation of an improvement district in the city; and

(5) it would be fair and equitable to finance all or part of the cost of the improvements by an assessment upon the real property within the district, the governing body may

5. The circuit court also ruled City had the authority to impose an assessment pursuant to its Home Rule powers. In light of our holding, we need not address this contention.

6. The Act was originally enacted in 1973 and has been amended several times, most recently by 1999 Act No. 118, § 2, eff. June 30, 1999.

establish the area as an improvement district and implement and finance, in whole or in part, an improvement plan in the district in accordance with the provisions of this chapter. However, owner-occupied residential property which is taxed under Section 12–43–220(c) must not be included within an improvement district unless the owner gives the governing body written permission to include the property within the improvement district.

(B) If an improvement district is located in a redevelopment project area created under Title 31, Chapter 6, the improvement district being created under the provisions of this chapter must be considered to satisfy items (1) through (5) of subsection (A). The ordinance creating an improvement district may be adopted by a majority of council after a public hearing at which the plan is presented, including the proposed basis and amount of assessment, **or upon written petition signed by a majority in number of the owners of real property within the district which is not exempt from ad valorem taxation** as provided by law. However, owner-occupied residential property which is taxed under Section 12–43–220(c) must not be included within an improvement district unless the owner gives the governing body written permission to include the property within the improvement district.[7] (Emphasis supplied).

In the present case, City opted to use the emphasized method, i.e., a written petition by a majority of the owners of real property within the district which is not exempt from ad valorem taxation.

### a. Legislative Intent

■ The Church asserts imposition of an assessment against it is contrary to the legislative intent that tax-exempt property owners not be subjected to charges, as evidenced by the fact that they are not included in the petition process.[8]

■ Initially, we note that municipalities **do** have the authority to impose assessments upon otherwise tax-exempt

---

7. The owner occupied exemption was added in the 1999 amendments.

8. Church does not argue the assessment is in fact a "tax" and has not appealed the circuit court's ruling that the assessment is a fee rather than a tax. *See Brown v. County of Horry,* 308 S.C. 180, 417 S.E.2d 565 (1992) (generally, a tax is an enforced contribution to provide for the

churches for street improvements. *See City of Greenville v. Query,* 166 S.C. 281, 164 S.E. 844 (1931); *Wesley M.E. Church v. Columbia,* 105 S.C. 303, 89 S.E. 641 (1916)(churches and similar institutions, otherwise exempted from taxation, have been denied by this court exemption from liability for street improvement assessments). *See also Sutton v. Town of Fort Mill,* 171 S.C. 291, 172 S.E. 119 (1933)(recognizing distinction between "taxes" and "assessments" and holding that an assessment for street paving is not a tax under the constitutional meaning). The issue remains, however, whether the Legislature intended to exempt tax-exempt properties from assessments under the Municipal Improvement Act.

Essentially, section 5–37–40(B) allows two methods to create an improvement district: it may be done by a majority of council after a public hearing at which the plan is presented, **or** it may be accomplished by written petition signed by a majority in number of the owners of non-tax exempt real property within the district. However, even when a majority petitions, it is up to the governing body to create the district by ordinance with such changes and/or modifications as it may determine. S.C.Code Ann. § 5–37–100. It is also up to the governing body to adopt a resolution describing the improvement district, and its purposes, and setting a public hearing at which interested persons may be heard. S.C.Code Ann. § 5–37–50. Thereafter, the governing body may adopt an ordinance creating the district. S.C.Code Ann. § 5–37–100.

Church argues the failure of the Legislature to include it in the petition process under subsection 5–37–40(B) indicates a legislative intent that it be exempted from assessments under the Act. We disagree. The fact that the Legislature has seen fit to specifically exempt some categories of properties from assessments under the Act, and has failed to do so for tax-exempt properties, is dispositive.

S.C.Code Ann. § 5–37–20(3) specifically exempts the State House grounds from inclusion in an improvement district. Further, section 5–37–40(B) exempts owner-occupied residential property from inclusion within an improvement district unless the owner gives the governing body written permission

support of government, whereas a fee is a charge for a particular benefit to the payer).

to include the property within such district. 1999 Act No. 118, § 2. In *Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000), we recently recognized:

> The canon of construction "expressio unius est exclusio alterius" or "inclusio unius est exclusio alterius" holds that "to express or include one thing implies the exclusion of another, or of the alternative." Black's Law Dictionary 602 (7th ed. 1999).... The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded. Exceptions strengthen the force of the general law and enumeration weakens it as to things not expressed. Norman J. Singer, *Sutherland Statutory Construction* § 47.23 at 227 (5th ed. 1992) (citations omitted).

Here, the General Assembly has specifically exempted both owner-occupied residences and the State House grounds from inclusion in improvement districts. Under the doctrine of "expressio unius est exclusio alterius," its failure to exclude tax-exempt properties is indicative of a legislative intent that such properties may be included in an improvement district. Accordingly, we find no clearly evinced legislative intent expressed in section 5–37–40.

### Due Process/Equal Protection

The Church also asserts that depriving it of the opportunity to participate in the petition process violates due process and equal protection. We disagree.

■ As for its due process contention, we find no violation. Although Church did not have an opportunity to petition to be in a majority of those supporting creation of an improvement district, it was given notice of the resolution and ample opportunity to be heard, along with the opportunity to file objections and appeal any assessment. Moreover, as the circuit found, the petition process is merely the first step in the process of adopting an ordinance to create an improvement district. It does not result in creation of the district; the actual creation of the district still depends upon a favorable majority vote of City Council.[9] In fact, the ordinance here was not adopted until there had been two public hear-

---

**9.** *See also* S.C.Code §§ 5–37–50, 5–37–60, 5–37–100, 5–37–100, 5–37–110, 5–37–120, and 5–37–120 (setting forth procedures municipality must follow to enact ordinance and make assessments).

ings, at which objections were heard, and a favorable second reading of the resolution at council. We find Church was sufficiently afforded due process. *Accord Stono River Env't Prot. Ass'n v. South Carolina Dep't of Health and Env'tl Control*, 305 S.C. 90, 406 S.E.2d 340 (1991); *Ogburn–Matthews v. Loblolly Partners*, 332 S.C. 551, 505 S.E.2d 598 (Ct.App.1998) (requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review).

▇ Church also asserts it is being denied equal protection as it is being treated differently from others who are similarly situated, i.e., it is being assessed along with all other property owners, but it is not allowed to initiate creation of a district via the petition process. We disagree.

▇ To satisfy the Equal Protection Clause, a classification must (1) bear a reasonable relation to the legislative purpose sought to be achieved, (2) members of the class must be treated alike under similar circumstances, and (3) the classification must rest on some rational basis. *D.W. Flowe & Sons, Inc. v. Christopher Constr. Co.*, 326 S.C. 17, 23, 482 S.E.2d 558, 562 (1997). A legislative enactment will be sustained against constitutional attack if there is "any reasonable hypothesis" to support it. *Id.*

Contrary to Church's contention, it is not similarly situated to other property owners; it is tax-exempt. We find the Legislature could reasonably have determined that those property owners who currently pay taxes on their property should be afforded a greater voice in determining whether an improvement district is to be created. Given that the non-exempt property owners already bear a greater financial burden with respect to payment of taxes, we find it completely logical that they should likewise be the ones to petition for creation of a district. Indeed, it would seem anomalous to allow those tax-exempt property owners, who currently share none of the financial burdens, to petition for creation of a district resulting in an even greater financial responsibility on those who do currently pay *ad valorem* taxes.[10] Accordingly, we find no equal protection violation.

---

10. It is undisputed that of the 309 properties in the improvement district, only 14 were tax-exempt. The City's director of economic

Further, under section 5–37–40, the municipality is not required to obtain a majority of **any** property owners and can adopt an ordinance by a majority of county council, and is not in any way bound by a majority petition. We fail to see in what manner exclusion of the Church from the petition process denies it of equal protection or due process.

We find the failure to include tax-exempt properties from the petition process of section 5–37–40(B) does not indicate a Legislative intent to exempt such properties from an assessment under the Municipal Improvement Act. Further, we find a lack of participation in the petition process does not deprive Church of either equal protection or due process. Accordingly, the circuit court's ruling upholding the assessment is

**AFFIRMED.**

TOAL, C.J., MOORE and PLEICONES, JJ., concur.
BURNETT, J., dissenting in a separate opinion.

Justice BURNETT dissenting:

I respectfully dissent. In my opinion, the General Assembly intended to exclude owners of property exempt from ad valorem taxation from assessment under the Municipal Improvement Act. Accordingly, I would reverse the trial judge's order granting summary judgment in favor of the City.

The cardinal rule of statutory construction is that the Court ascertain and effectuate the actual intent of the legislature. *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 377 S.E.2d 569 (1989). A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *Browning v. Hartvigsen*, 307 S.C. 122, 414 S.E.2d 115 (1992).

As originally enacted, the predecessor to South Carolina Code Ann. § 5–37–40(B) (Supp. 2001) provided:

... If the governing body shall find ... and (v) that it would be fair and equitable to finance all or part of the cost

---

development testified that even if all 14 of the tax-exempt organizations been against the district, it would not have altered the majority petition in favor of the district. However, if all tax-exempt properties owners were allowed to petition, it could have an impact on the required 51% majority needed under section 5–27–40(B).

of such improvements by an assessment upon the real property located within such district, the governing body may establish such area as an improvement district and implement and finance, in whole or in part, an improvement plan therein in accordance with the provisions of this act; *provided,* that the governing body shall, prior to the enact- ment of the ordinance creating the improvement district, obtain written consent for the creation of such improvement district from a majority in number of the owners of real property within the district and having an aggregate as- sessed value in excess of sixty-six percent of the assessed value of all real property within such improvement district.

Act No. 1207, § 4, 1974 Acts 2813(italic in original) (underline added).

Thereafter, the General Assembly amended the Municipal Improvement Act as follows:

If the governing body finds that: ... (v) it would be fair and equitable to finance all or part of the cost of the improvements by an assessment upon the real property within the district, the governing body may establish the area as an improvement district and implement and finance, in whole or part, an improvement plan in the district in accordance with the provisions of this chapter. However, the governing body, prior to the enactment of the ordinance creating the improvement district, shall obtain written con- sent for the creation of the improvement district from a majority in number of the owners of real property within the district that is not exempt from taxation under the Internal Revenue Code and having an aggregate assessed value in excess of sixty-six percent of the assessed value of all real property within the improvement district that is not exempt from taxation under the Internal Revenue Code.

Act No. 160, § 1, 1987 S.C. Acts 1081 (underline added).

The following year, the legislature again amended the Mu- nicipal Improvement Act to permit, in relevant part, adoption of an improvement district through initiative. In part, the statute provided:

... The ordinance creating an improvement district may be adopted by a majority of council after a public hearing at which the plan is presented, including the proposed basis of

the assessment, <u>or upon written petition signed by a majority in number of the owners of real property within the district which is not exempt from ad valorem taxation as provided by law.</u>

Act No. 505, § 2, 1988 S.C. Acts 4550.

In 1999, this section was again amended. It appears today as follows:

. . . The ordinance creating an improvement district may be adopted by a majority of counsel after a public hearing at which the plan is presented, including the proposed basis and amount of assessment, or upon written petition signed by a majority in number of the owners of real property within the district which is not exempt from ad valorem taxation as provided by law. However, owner-occupied residential property which is taxed under Section 12–43–220(c) must not be included within an improvement district unless the owner gives the governing body written permission to include the property within the improvement district.

Act No. 118, 1999 S.C. Acts 1238 (codified at S.C. Code Ann. § 5–37–40 (Supp. 2001)).

The legislative history of the Municipal Improvement Act indicates the General Assembly's clear intent to allow a municipality to assess the improvement fee only upon those property owners who have property which is subject to ad valorem taxation. *See Wade v. Berkeley County,* 348 S.C. 224, 559 S.E.2d 586 (2002) (in interpreting a statute, the Court will not ignore its clear legislative history). Until 1988, the Municipal Improvement Act required a municipality to obtain the consent of a majority of owners who had taxable real property with an assessed value in excess of sixty-six percent before establishing an improvement district. In 1988, the General Assembly deleted the majority consent requirement, but added a petition method which permitted a majority of tax-paying property owners to petition the municipality for creation of an improvement district. In 1999, the legislature added the provision which required owners of owner-occupied residential property to consent to inclusion of their property in the improvement district.

As I read the history of the Municipal Improvement Act, the General Assembly intended only those property owners

who are subject to ad valorem taxation to pay the assessments for the improvement district. To hold otherwise and require churches and other charitable institutions who receive no economic benefit from the improvement district would be absurd.

Contrary to the majority's analysis, the owner-occupied provision does not evince the legislature's intent to exclude only owner-occupied residencies from the assessment. Instead, the provision indicates the General Assembly's intent to exclude only one type of property subject to ad valorem taxation—owner-occupied residences—from the improvement district assessment. All other owners of property subject to ad valorem taxation are subject to the assessment. Since Church is not subject to ad valorem taxation,[1] City may not assess Church for the improvement district.

Finally, Section 5–37–20(3) which precludes the State House grounds from inclusion in any special improvement district does not evince the General Assembly's intent as to which property owners must pay the assessments for improvement districts.

In my opinion, the trial judge erred in granting summary judgment in City's favor. I would reverse.