578 S.E.2d 3

**Jo Ann RIGGS, Respondent,**

v.

**Dennis RIGGS, Appellant.**

No. 25598.

Supreme Court of South Carolina.

Heard Jan. 9, 2003.
Decided Feb. 24, 2003.
Rehearing Denied April 2, 2003.

Robert M. Rosenfeld, of Porter & Rosenfeld, of Greenville, and David A. Wilson, of Horton, Drawdy, Ward & Black, P.A., of Greenville, for appellant.

D. Michael Henthorne, of McNair Law Firm, of Myrtle Beach, for respondent.

Justice MOORE:

This appeal is from a family court order requiring appellant (Husband) to pay child support for his adult disabled child and refusing to terminate his alimony payments to respondent (Wife). We affirm.

## FACTS

Husband and Wife divorced in 1985. By consent, a modification order was entered in 1987 setting Husband's periodic alimony payments at $400 per month and child support at $800 per month for their three minor children. As each child

reached eighteen, Husband reduced his child support payment proportionately. Finally, in 1995, the youngest child reached eighteen and Husband ceased paying child support altogether.

Wife commenced this action in 1998 seeking an increase in alimony or, in the alternative, child support for Nancy, the parties' middle child, who turned eighteen in 1993 but still lives with Wife. Nancy is disabled from Leigh's Syndrome, a degenerative metabolic disease with which she was diagnosed in 1995. Nancy first started experiencing problems related to her condition sometime in 1993, the year she turned eighteen. Nancy functions on the level of an eight- to ten-year-old and has eye and muscle mobility problems. She also suffers from obsessive-compulsive disorder and is afraid of strangers. She insists on sleeping in Wife's bed and cannot be alone for any significant amount of time. Wife assists Nancy with her daily care including meals, bathing, and dressing.

In response to Wife's complaint, Husband counterclaimed for a termination or reduction of alimony. He contested child support on the ground Nancy was over eighteen years of age.

After a hearing, the family court reduced Husband's alimony payment to $150 per month but ordered him to pay child support for Nancy in the amount of $553.14 per month, reduced by the amount of his monthly health insurance premium for Nancy. Child support was ordered retroactive to the date of filing of Wife's complaint.

## ISSUES

1. Does the family court have jurisdiction under § 20–7–420(17) to order child support for an adult disabled child who has never been emancipated?

2. Does this section violate equal protection?

3. Did the family court abuse its discretion in refusing to terminate alimony?

## DISCUSSION

### 1. Continuation of child support

The family court's jurisdiction to order child support in this case derives from S.C.Code Ann. § 20–7–420(17) (Supp. 2002) which provides:

The family court shall have exclusive jurisdiction:

(17) To make all orders of support run until further order of the court, except that orders for child support run until the child is eighteen years of age or until the child is married or becomes self-supporting, as determined by the court, whichever occurs first or to provide for child support past the age of eighteen years if the child is in high school and is making satisfactory progress toward completion of high school, not to exceed the nineteenth birthday unless exceptional circumstances are found to exist or unless there is a preexisting agreement or order to provide for child support past the age of eighteen years; *and in the discretion of the court, to provide for child support past age eighteen where there are physical or mental disabilities of the child or other exceptional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue.*

(emphasis added).

■ Husband contends the family court could not order child support in this case because § 20–7–420(17) provides only for the "continuation" of child support past eighteen. Husband claims since Nancy's disability was not diagnosed before she reached eighteen and child support for Nancy had already terminated, the family court's order was not a "continuation" of support within the terms of the statute.

First, medical testimony in the record indicates Nancy's condition is "a genetic error of metabolism." Although this condition was not definitively diagnosed until she was past eighteen, the fact that it is of genetic origin indicates Nancy's disability was not caused by some event that occurred after she reached majority. It is uncontested that Nancy has never been emancipated. Further, Husband's child support obligation was not judicially terminated; Husband relied on the presumption of emancipation to terminate payment on his own.

■ Most jurisdictions recognize a common law duty of parental support for a child who has reached majority but is so physically or mentally disabled as to be unable to support

herself.[1]  Where the disability prevents the child from becoming emancipated, the presumption of emancipation upon reaching majority is inapplicable.  *Parker v. Parker*, 230 S.C. 28, 31, 94 S.E.2d 12, 13 (1956) (emancipation is effected by operation of law when a child attains majority unless there is some "infirmity of mind or body rendering the child unable to take care of itself").

■  We construe the language of § 20–7–420(17) to be consistent with this common law duty and hold the family court is vested with jurisdiction to order child support for an unemancipated disabled adult child.  Further, we discern the legislature's intent that a noncustodial parent share the burden of supporting a child who cannot be emancipated because of a disability that arose before majority but was diagnosed only after the child turned eighteen.

■  Emancipation is a factual issue dependent upon the circumstances of each case.  *Timmerman v. Brown*, 268 S.C. 303, 233 S.E.2d 106 (1977).  In this case, there is no challenge to the fact that Nancy is not emancipated.  Further, her disability has prevented her emancipation.  The family court therefore had jurisdiction under § 20–7–420(17) to order child support in this case.[2]

---

1.  *See Streb v. Streb*, 774 P.2d 798 (Alaska 1989); *Towery v. Towery*, 285 Ark. 113, 685 S.W.2d 155 (1985); *Nelson v. Nelson*, 548 A.2d 109 (D.C.1988); *Pocialik v. Fed. Cement Tile Co.*, 121 Ind.App. 11, 97 N.E.2d 360 (1951); *Davis v. Davis*, 246 Iowa 262, 67 N.W.2d 566 (Iowa 1954); *In re Glass' Estate*, 175 Kan. 246, 262 P.2d 934 (1953); *State ex rel. Kramer v. Carroll*, 309 S.W.2d 654 (Mo.App.1958); *Kruvant v. Kruvant*, 100 N.J.Super. 107, 241 A.2d 259 (A.D.1968); *Wells v. Wells*, 227 N.C. 614, 44 S.E.2d 31 (1947); *Cohn v. Cohn*, 123 N.M. 85, 934 P.2d 279 (N.M.App.1996); *Castle v. Castle*, 15 Ohio St.3d 279, 473 N.E.2d 803 (1984); *Commonwealth ex rel. Cann v. Cann*, 274 Pa.Super. 274, 418 A.2d 403 (1980); *Sayne v. Sayne*, 39 Tenn.App. 422, 284 S.W.2d 309 (1955); *Van Tinker v. Van Tinker*, 38 Wash.2d 390, 229 P.2d 333 (1951).

2.  Husband also argues the award of child support was not in Nancy's best interest because she will lose benefits such as Social Security Income and medicaid.  The record indicates an administrative law judge has ruled that the child support payments do not make Nancy ineligible for Social Security Income.  Although there is speculation in the record that Nancy's eligibility for other government programs may be affected, it is mere speculation.  This issue is without merit.

## 2. Equal protection

Husband contends the underscored language of § 20–7–420(17) violates equal protection because a married parent has no legal obligation to support a disabled adult child and therefore a divorced parent cannot constitutionally be ordered to support such a child.[3] This issue is without merit. Equal protection essentially requires that all those similarly situated are treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As we construe it, § 20–7–420(17) treats divorced parents the same as all other parents regarding support for an unemancipated disabled adult child. We find no equal protection violation.

## 3. Alimony

The family court reduced Husband's monthly alimony obligation from $400 per month to $150 per month, a reduction of about 62%. Husband contends alimony should have been terminated, rather than reduced, because of Wife's increased financial ability.

The modification of alimony is within the sound discretion of the family court and will not be overturned absent an abuse thereof. *Thornton v. Thornton*, 328 S.C. 96, 492 S.E.2d 86 (1997). A modification of alimony must be based on a substantial or material change in circumstances. *Sharps v. Sharps*, 342 S.C. 71, 535 S.E.2d 913 (2000). In addition to the changed circumstances of the parties, the financial ability of the supporting spouse to pay is a specific factor to be considered. S.C.Code Ann. § 20–3–170 (1985).

Although both parties have increased income, Wife still earns substantially less than Husband. Wife's original earn-

---

3. This issue was not raised to the family court. The issue of a statute's constitutionality may be raised for the first time on appeal, however, where the statute determines subject matter jurisdiction. *State v. Keenan*, 278 S.C. 361, 296 S.E.2d 676 (1982). Because § 20–7–420 determines the family court's subject matter jurisdiction, *Amisub of South Carolina, Inc. v. Passmore*, 316 S.C. 112, 447 S.E.2d 207 (1994), this issue is properly before us.

ings were 22% of Husband's; Wife now earns 37% of Husband's income.[4] The family court found Wife's increased income justified a reduction in alimony but properly considered Wife's continued custodial care of Nancy in refusing to terminate it. *Cf.* S.C.Code Ann. § 20–3–130(C)(9) (Supp.2002) (in making award of alimony, family court must consider custody of children). In light of the substantial reduction in alimony ordered by the family court, Husband has failed to show an abuse of discretion.

## CONCLUSION

Husband's remaining issues are without merit and we dispose of them pursuant to Rule 220(b), SCACR. *See* Issue IV: *Smith v. Smith,* 275 S.C. 494, 272 S.E.2d 797 (1980); *Hatfield v. Hatfield,* 327 S.C. 360, 489 S.E.2d 212 (Ct.App.1997) (issue must be raised to and ruled on by family court to be preserved for review); *and* Issue V: *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991) (beneficial result a factor to be considered in awarding attorney's fees). The order of the family court is

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

4. At the time of the 1987 consent order setting alimony at $400 per month, Wife was earning $12,000 to 13,000 per year. The family court found her current income to be $4,091 per month, or $49,092 per year, from her salary as an accountant, investment income, and part-time work. At the time the parties divorced, Husband earned $56,000 to 58,000 per year. The family court found he now earns $11,066 per month, or $132,792 per year. Husband does not contest the family court's findings regarding the parties' income.