354

588 S.E.2d 630

Mary LIVINGSTON a/k/a Marie Livingston, Appellant,

v.

TOWN OF MT. PLEASANT, Respondent.

No. 3687.

Court of Appeals of South Carolina.

Heard Sept. 9, 2003.
Decided Oct. 27, 2003.

George J. Morris, of Charleston, for Appellant.

J. Paul Trouche and Thomas S. White, both of Charleston, and R. Allen Young, of Mt. Pleasant, for Respondent.

GOOLSBY, J.

This appeal concerns whether a parcel of property owned by Mary Livingston is subject to a special assessment that was imposed by the Town of Mt. Pleasant to fund the widening and improvement of Patriots Point Boulevard. The assess-

ment was adopted pursuant to the Municipal Improvement Act of 1999.[1] The circuit court upheld the assessment, and Livingston appeals. We affirm.

## FACTS

Mary Livingston[2] owns a parcel of property adjoining Patriots Point Boulevard in the Town of Mt. Pleasant. In May 2001, the Town Council of Mt. Pleasant adopted a resolution creating the Patriots Point Improvement District to implement the Patriots Point Improvement Plan. The Improvement Plan involved widening and redesigning Patriots Point Boulevard and provided for landscaping, the construction of sidewalks, and the addition of pedestrian and biking trails. The Improvement Plan also contemplated improvements to drainage and to the intersection where Coleman Boulevard meets Patriots Point Boulevard.

The Town Council's resolution anticipated the total cost of the project, as estimated by the Improvement Plan, would be $5,110,000. The Town of Mt. Pleasant was to contribute $1,470,000 and the remaining $3,640,000 was to come from special assessments imposed on the property owners within the District. The vast majority of these assessments were to be from commercial property owners with previous development agreements with Mt. Pleasant. The remainder of the assessments, estimated at only $168,101, was to come from individual, private property owners like Livingston. Livingston's parcel, like that of other members of the District, was undeveloped and commercially zoned. None of the parcels in the District is owner-occupied residential property.

The Town Council based the amount of each property owner's assessment on the ratio of the acreage of the assessed property to the total acreage of all of the assessed properties in the District. The District consisted of nearly 400 acres.

---

1. S.C.Code Ann. §§ 5–37–10 to –180 (Supp.2002). The Act was originally enacted in 1973 and has been amended several times, most recently by 1999 S.C. Act No. 118, § 2, which was effective June 30, 1999. *See German Evangelical Lutheran Church v. City of Charleston,* 352 S.C. 600, 576 S.E.2d 150 (2003).

2. Livingston's first name appears as Marie, instead of Mary, on some documents in the record.

Livingston's parcel measured 4.63 acres, and the Town Council calculated her assessment at $46,218 as her pro rata share relative to the total acreage in the District.

The ordinance formally creating the District was enacted on June 25, 2001.[3] The Town Council found that the improvements would be beneficial within the District and encourage development, would preserve or increase property values within the District, and would likely maintain or improve the general welfare and tax base. The Town Council further found it would be fair and equitable to finance all or part of the costs by an assessment.

Livingston appeared at a hearing before the Special Committee of the Town Council to object to the special assessment imposed on her parcel, but the assessment was upheld. Livingston appealed to the circuit court, which affirmed and ordered Livingston to pay her share of the special assessment.

## STANDARD OF REVIEW

Appeals regarding assessments "shall be heard and determined on the record in the manner of appeals from administrative bodies in this State." [4] Appeals from administrative bodies are governed by the Administrative Procedures Act (APA), which provides the reviewing court must affirm the agency's decision if it is supported by substantial evidence; further, the court "may not substitute [its] judgment for that of the agency upon questions as to which there is room for a difference of intelligent opinion." [5] "Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached." [6]

---

**3.** Mt. Pleasant, S.C., Ordinance 01036 (June 25, 1991).

**4.** S.C.Code Ann. § 5–37–140 (Supp.2002).

**5.** *Byerly Hosp. v. South Carolina State Health & Human Servs. Fin. Comm'n,* 319 S.C. 225, 229, 460 S.E.2d 383, 385–86 (1995); *see also* S.C.Code Ann. § 1–23–380(A)(6) (Supp.2002) (setting forth procedures for appeals under the APA).

**6.** *McCraw v. Mary Black Hosp.,* 350 S.C. 229, 235, 565 S.E.2d 286, 289 (2002).

## LAW/ANALYSIS

Livingston asserts the circuit court erred in upholding the special assessment against her property because the improvements should have been totally paid for out of the general tax revenue and, even if the improvements were the proper subject of an assessment, the amount of her assessment was not supported by the record.

### I.

We first consider Livingston's contention that the improvements should have been paid for out of the general tax revenue.

Normally, taxes are imposed on all property for the maintenance of the government, while assessments are imposed only on the property that is to be benefited.[7] In order to impose an assessment on property for an improvement, the improvement must confer a benefit on the property that is distinguishable from the general benefit enjoyed by surrounding areas.[8]

The Municipal Improvement Act of 1999 authorizes municipalities to establish improvement districts and create improvement plans in order to preserve or increase property values within the district, to prevent deterioration of urban areas, and to preserve the tax base and general welfare of the municipality.[9] An improvement district may be established when it would be fair and equitable to do so and the improvements would confer a special benefit to members of the District.[10]

The municipality is authorized to finance such improvement plans by the imposition of assessments, the issuance of bonds, or any combination of these methods.[11]

---

7. *Robinson v. Richland County Council,* 293 S.C. 27, 358 S.E.2d 392 (1987).

8. *Id.*

9. S.C.Code Ann. § 5–37–40 (Supp.2002).

10. *Id.*

11. *Id.* § 5–37–30; *see also German Evangelical Lutheran Church v. City of Charleston,* 352 S.C. 600, 576 S.E.2d 150 (2003).

It is within the power and discretion of the legislature or, where delegated by statute, to a municipal corporation, "to determine whether the general public or property owners whose property abuts, fronts on, or is adjacent to [ ] a local improvement and is specially benefited[,] at least to the extent [of] the cost thereof[,] shall pay the entire cost thereof, or whether the cost shall be apportioned between the public and such property owners, and, if so, the proportion to be paid by each." [12]

"As a general rule, the courts consider the widening of a street to be of special benefit to the adjacent property so as to constitute a local improvement justifying a special assessment on such property, especially when the widening of the street makes it more attractive for commercial operations." [13] Additionally, where a street widening or improvement has resulted in special benefits to adjacent properties, they can be specially assessed even though the improvement project will also be of some general benefit to the public. [14]

In the current case, when the Town Council's proposal was first presented to the property owners, the improvement of Patriots Point Boulevard was seen by Town Council representatives as primarily benefiting "users of the Patriots Point area, which includes the Patriots Development Authority property as well as the leased properties from Patriots Point." It was further noted "that 60%–70% of the citizens in the Town would not utilize this road." Moreover, the use of the municipal improvement district was seen as an equitable means by which to improve the road in the area and pay the cost thereof.

In the resolution establishing the Patriots Point Improvement Plan, the Town Council found and determined that it had the power under the Act "to effect improvements within an improvement district to preserve property values, prevent deterioration of urban areas, and preserve their tax bases."

12. 64 C.J.S. *Municipal Corporations* § 1271 (1999).

13. 70C Am.Jur.2d *Special or Local Assessments* § 40 (2000).

14. Wade R. Habeeb, Annotation, *Widening of City Street as Local Improvement Justifying Special Assessment of Adjacent Property,* 46 A.L.R.3d 127, 141–42 (1972).

The Town Council further found the Improvement Plan "was necessary and in the best interest of the health, safety, and general welfare of the citizens of the Town."

In upholding the establishment of the District, the circuit court found that the Town Council "passed an ordinance to develop Patriots Point Boulevard after finding that this project would increase property values of the members of the District, would protect the tax base of the town, and would encourage development in the District." The court found that "Livingston's property, like that of other members of the District, is an undeveloped parcel, commercially zoned, and fronts on Patriots Point Boulevard" and that "[i]t is reasonable to assume that the improvements contemplated will encourage development in the District and will enhance the value of ... Livingston's property."

The court further found that "it is clear that the decision of Mt. Pleasant to require adjoining property owners to pay a small portion of the total cost of the project is fair and equitable within the meaning of the Municipal Improvement[ ] Act," especially considering that "Mt. Pleasant itself will pay $1,470,000.00 of the total cost" of the project and private property owners will pay only $168,101.

Under these circumstances and considering the record as a whole, we hold the circuit court did not err in upholding the decision of the Town Council to establish the District. Although reasonable persons could disagree, we find there was no basis for the circuit court to substitute its opinion for that of the Town Council regarding the propriety of establishing the District. As noted by the circuit court, Patriots Point Boulevard is a dead-end road primarily serving commercial business properties located along the boulevard. The primary beneficiaries of any improvement along the road are the adjoining property owners and their portion of the total cost of this rather substantial project is comparatively small. We see no reason, therefore, to disturb the court's ruling.[15]

---

**15.** *See* 70C Am.Jur.2d *Special or Local Improvements* § 89 (2000) ("[T]he assessment of a portion of the cost of a street improvement on a business district is warranted by the fact that such improvement carries vehicular traffic into the business district on a more direct route."); 64 C.J.S. *Municipal Corporations* § 1273 (1999) ("The determination as to whether the cost of a public improvement shall be apportioned between

## II.

██ Livingston further argues that, even if the improvements were the proper subject of an assessment, the circuit court erred in upholding the amount of her assessment. Specifically, she contends the Town Council should have used the front-footage method to apportion the assessments imposed rather than the area method.

Under the Municipal Improvement Act of 1999, the governing body of a municipality may impose assessments within an improvement district "based on assessed value, front footage, area, per parcel basis, the value of improvements to be constructed within the district, or any combination of [these methods]." [16] "The apportionment of benefits received from a special assessment is a legislative function and, if reasonable persons may differ as to whether the land assessed is benefited by the improvement, the finding of the legislative body that it does must stand." [17] "Included within the broad discretion accorded to a special assessment commission [or governing body] is the discretion to choose the method used to determine

---

the municipal corporation and property owners specially benefited thereby and, if apportioned, the respective portions of the cost to be borne by the municipality and the property owners so benefited, when made by a municipal council or some other subordinate board in whom the power to determine has been vested by statute, is generally held conclusive and final in the absence of evidence of fraud, or bad faith, or actual abuse of power, or a showing that the council or board acted arbitrarily, or made a mistake of fact or law. Such a determination will not be disturbed by the courts because there may a difference of honest opinion as to what should be the decision."); *cf.* Habeeb, *supra* note 13, at 138–39 ("In accordance with the general principles that the question of the existence and extent of a special benefit resulting from a public improvement for which a special assessment is made is one of fact, legislative or administrative[,] rather than judicial in character, and that the determination of such question by the legislature, or by the body authorized to act in the premises, is conclusive on the property owners and on the courts, unless it is palpably arbitrary or grossly unequal and confiscatory, the courts have held or recognized in many cases ... that the determination of whether a street widening resulted in a special benefit was committed to the legislature or delegated local authorities, whose decision would be conclusive in the absence of fraud, bad faith, or arbitrary action.").

16. S.C.Code Ann. § 5–37–20(1) (Supp.2002).

17. 70C Am.Jur.2d *Special or Local Assessments* § 87 (2000).

the benefits and apportion the costs to individual properties within the improvement district." [18]

In the case before us, the Town Council opted to apportion the amount of the assessments based on the area method, i.e., the assessment was based on the ratio of the acreage of the assessed property to the total acreage of all of the assessed properties in the District. Livingston asserts the Town Council should have used the front-footage method instead of basing it on the area of the property because her parcel, while large, has only approximately fifty feet of frontage on Patriots Point Boulevard.

In rejecting Livingston's contention that the assessment should have been based on front footage, the circuit court found that "[t]he frontage length is not the relevant measure of value. The important advantage for members of the District is proximity to traffic flow and the opportunity to benefit through points for entrance and egress between their properties and Patriots Point Boulevard." The court noted that "[t]his is not a function of space; it is a function of proximity. It would be discriminatory to subject those owners who happen to have more footage on Patriots Point Boulevard to a higher assessment for this reason alone." The court further observed that, "[w]hile some members of the District inevitably pay a higher assessment because they own more acreage, there is no demonstrably fairer way to establish the assessment among the alternatives presented under the [Municipal Improvement] Act." The court concluded that the Town Council had observed the requirements set forth in the Act in selecting a method of apportionment and that there had been no showing that the Town Council's actions were "arbitrary, capricious, or clearly erroneous, the only standards under the [APA] upon which ... Livingston ... made her challenge."

Considering the record as a whole, we see no reason to depart from the circuit court's determination that the Town Council did not act improperly in choosing the area method of apportionment and in calculating the amount of Livingston's

---

18. *Id.* § 93.

special assessment.[19]

**AFFIRMED.**

HOWARD, and BEATTY, JJ., concur.

---

19. *See* 70C Am.Jur.2d *Special or Local Assessments* § 95 ("[S]uch apportionment according to benefits is arrived at by resorting to a practical basis of apportionment, such as frontage or superficial area, which results in a distribution of the burden substantially, if not exactly, in proportion to the benefits conferred."); *id.* § 93 ("It is not for a court to determine which of the various methods of assessing property for street improvements, whether by the front-foot rule or otherwise, is the fairer one, this being a matter of legislative discretion.").