692 S.E.2d 543

Timothy L. WEBB, Appellant,

v.

Janice Rush SOWELL, f/k/a Janice Rush Webb, Defendant
and Timothy Loren Webb, Jr., Third Party Defendant,

of whom Janice Rush Sowell and Timothy
Loren Webb, Jr. are Respondents.

No. 26807.

Supreme Court of South Carolina.

Heard Jan. 7, 2009.

Decided April 19, 2010.

Joe Wayne Underwood, of Moses, Koon & Brackett, and Regina Hollins Lewis, of Gaffney Lewis & Edwards, both of Columbia, for Appellant.

Stephen R. Smoak, of Savage, Royall & Sheheen, of Camden, for Respondents.

Justice PLEICONES.

This is a direct appeal from the family court's order requiring appellant, Timothy L. Webb (Father), to contribute to college expenses for his son, respondent Timothy Loren Webb, Jr. (Son). Because we find that *Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979) was wrongly decided and that S.C.Code Ann. § 63–3–530(A)(17)[1], as interpreted, is unconstitutional, we reverse.

## FACTS

Father and respondent Janice Rush Sowell (Mother) divorced in 1994. Father and Mother had two children born of the marriage; Son is the older of the two children. Son turned 18 on April 13, 2005, and started college in the fall of that same year. In April 2006, Father brought an action to reduce child support based on Son's emancipation. Mother counterclaimed for college expenses for Son who eventually joined the legal action as a third party defendant. Mother and Father agreed to reduce Father's child support obligation to reflect only support for their daughter, but the case proceeded to trial on Mother's counterclaim regarding Son's college expenses.

Mother's counterclaim was heard in January 2007, during Son's fourth semester. At the outset of the hearing, Father moved to dismiss Mother's counterclaim based on the Equal Protection clause of the federal and state constitutions. In an order denying Father's motion, the family court observed:

---

1. This statute was previously codified at § 20–7–420(17).

While the Court has reviewed the motion with some interest and follows the logic proposed by the Plaintiff, the Court is bound by the case of *Risinger v. Risinger* and its progeny and therefore determines that until there is further ruling by either the Court of Appeals or the Supreme Court, it is appropriate in this instance to require the Plaintiff to contribute to the support of his son's college education. Therefore, the Plaintiff's motion to dismiss on the constitutional grounds is denied.

The family court required Son to apply for "all grants, scholarships and loans" as well as "earn as much money as he can during the summer months and holidays to defray his expenses." Further, the family court specifically found that Son "has the obligation to carry as much of the burden as he can." The family court found that thereafter, Mother and Father would equally divide all reasonable college expenses, to include tuition, books, room, board, spending money, meals, supplies, fees, health insurance, transportation, and any other incidental expenses. This appeal followed.

## ISSUE

Does the family court's order obligating Father to contribute to Son's college expenses violate the Equal Protection Clause?

## DISCUSSION

■ Father argues that this Court's interpretation in *Risinger* of the statute now found at S.C.Code Ann. § 63-3-530(A)(17) violates equal protection. We agree, and find no rational basis for a rule that permits a family court to order a parent subject to a child support order to contribute to an emancipated child's post-secondary education.

S.C.Code Ann. § 63-3-530 provides, in relevant part:

(A) The family court has exclusive jurisdiction:

. . .

(17) To make all orders for support run until further order of the court, except that orders for child support run until the child is eighteen years of age or until the child is married or becomes self-supporting, as determined by the

court, whichever occurs first; or without further order, past the age of eighteen years if the child is enrolled and still attending high school, not to exceed high school graduation or the end of the school year after the child reaches nineteen years of age, whichever is later; or in accordance with a preexisting agreement or order to provide for child support past the age of eighteen years; or in the discretion of the court, to provide for child support past age eighteen where there are physical or mental disabilities of the child or other exceptional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue.

S.C.Code Ann. § 63–3–530 (2007).

The statute provides that child support orders terminate when the child reaches age 18, marries, or becomes self-supporting.[2] However, a court may order the continuation of support beyond age 18 for certain "exceptional circumstances." In *Risinger*, this Court held that a desire to attend college may constitute such "exceptional circumstances." The Court explained as follows:

The need for education is the most likely additional "exceptional circumstance" which might justify continued financial support. Children over 18 with a physical or mental disability, and children over 18 in need of further education, have much in common. In each case, the child's ability to earn is either diminished or entirely lacking. In each case, most parents feel an obligation to help, and do help the child.

*Risinger*, 273 S.C. at 38, 253 S.E.2d at 653.

As the above passage makes clear, the *Risinger* Court focused on the interests of the child. The instant case, however, requires us to examine the rights of the parents. Because the statute only allows for the *continuation* of support beyond the age of 18, the effect of the *Risinger* decision is that a court may order a parent subject to a support order at the time his or her child reaches age 18 to pay college expenses. However, the statute grants the court no such

---

**2.** Of course, this portion of the statute and the *Risinger* case do not address situations in which a parent seeks to enforce an agreement regarding post-secondary education expenses.

power over a parent not subject to such an order,[3] nor is there any common law duty on parents to pay for an adult child's post-secondary education.[4]

■ The Equal Protection clauses of both the federal and state constitutions provide that no person shall be denied the equal protection of the laws. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3. To satisfy the Equal Protection Clause, a legislative classification must bear a reasonable relation to the legislative purpose sought to be achieved, the members of the class must be treated alike under similar circumstances, and the classification must rest on some rational basis. *See German Evangelical Lutheran Church of Charleston v. City of Charleston*, 352 S.C. 600, 608, 576 S.E.2d 150, 154 (2003).

We view the appropriate class as those parents subject to a child support order at the time of the child's emancipation and can discern no rational basis for the varied treatment of the class as compared to those parents who are not subject to such an order.[5] We therefore find that the statute, as interpreted by *Risinger*, fails the rational basis test and thus, does not meet the constitutional requirements of Equal Protection.[6]

---

3. We disagree with the Chief Justice's interpretation of S.C.Code Ann. § 63–3–530(A)(17). Though statutes are presumed constitutional and, if possible, will be construed to render them valid, we cannot ignore the plain reading of the statute. *See State v. Mills*, 360 S.C. 621, 624, 602 S.E.2d 750, 752 (2004) (despite rule of construction, "when the terms of the statute are clear and unambiguous, we are constrained to give them their literal meaning."). The portion of the statute cited by the Chief Justice's dissent plainly allows only for the "*continuation* of child support beyond age eighteen...." S.C.Code Ann. § 63–3–530(A)(17) (emphasis added).

4. We confine our opinion to post-secondary education only.

5. Though Appellant does not raise this specific classification, we note that this Court is asked, on appeal, to reconsider the validity of *Risinger*. Having found that this Court's prior interpretation of the statute created an unconstitutional classification, we feel bound to remedy the error. *See Am. Petroleum Inst. v. South Carolina Dep't of Revenue*, 382 S.C. 572, 580, 677 S.E.2d 16, 20 (2009) (duty of this Court to determine if statute exceeds the bounds of the constitution).

6. Because we find that S.C.Code Ann. § 63–3–530(A)(17), as interpreted by *Risinger*, violates Equal Protection, we need not decide the remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C.

## CONCLUSION

We find that S.C.Code Ann. § 63-3-530(A)(17), as interpreted in *Risinger*, violates the Equal Protection Clause. We therefore reverse the trial court's denial of Father's motion to dismiss.

**REVERSED.**

WALLER and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

KITTREDGE, J., dissenting in a separate opinion.

Chief Justice TOAL, dissenting.

I respectfully dissent. Appellant argues that S.C.Code Ann. § 63-3-530(A)(17), as interpreted by *Risinger v. Risinger*, 273 S.C. 36, 253 S.E.2d 652 (1979), violates the equal protection clauses of the United States and South Carolina constitutions. I disagree.

"In reviewing a statute challenged on equal protection grounds, great deference is given to the classification created, and it will be sustained if supported by any reasonable hypothesis and not plainly arbitrary." *Mitchell v. Owens*, 304 S.C. 23, 24-25, 402 S.E.2d 888, 889 (1991), *citing Samson v. Greenville Hosp. Sys.*, 295 S.C. 359, 368 S.E.2d 665 (1988). Furthermore, a statute enacted pursuant to legislative power is presumptively constitutional. *Nichols v. S.C. Research Auth.*, 290 S.C. 415, 351 S.E.2d 155 (1986). Finally, this Court has consistently held it will not construe a statute to do that which is unconstitutional. *See Ward v. State*, 343 S.C. 14, 19, 538 S.E.2d 245, 247 (2000), *citing Mitchell v. Owens*, 304 S.C. 23, 402 S.E.2d 888 (1991) (holding that statutes are presumed to be constitutional and will be construed so as to render them valid).

As a threshold matter, I must address the classification relied upon by the majority because it is not one before the Court. The majority holds that S.C.Code Ann. § 63-3-530(A)(17), as interpreted by *Risinger*, violates the equal

598, 613, 518 S.E.2d 591, 598 (1999) (appellate court need not discuss remaining issues when disposition of prior issue is dispositive).

protection clauses of the United States and South Carolina constitutions, finding that there is no rational basis for what it perceives to be the government's disparate treatment of parents subject to support orders prior to a child's emancipation and parents not subject to support orders prior to a child's emancipation. Appellant did not raise this argument,[7] but rather asserted that section 63–3–530(A)(17) violates equal protection because it treats divorced and non-divorced parents differently. Thus, in my view, the majority erroneously relies upon an argument not before the Court.

Nonetheless, assuming Appellant raised the classification relied upon by the majority, section 63–3–530(A)(17) does not treat such classes disparately. Section 63–3–530(A)(17) grants the family court jurisdiction to order continuation of a support order entered prior to a child's emancipation, but the jurisdiction granted to the family court is not confined to such situations. Section 63–3–530(A)(17) also grants jurisdiction to award support for post-secondary education "in the discretion of the court." That is, the court may order a parent to provide support to cover the expenses of exceptional circumstances encountered by an emancipated child, such as post-secondary education, whether or not there was a support order in effect prior to the child's emancipation.[8]

Turning to the classification actually raised by Appellant, I do not agree that section 63–3–530(A)(17) treats divorced parents and non-divorced parents differently. Section 63–3–530(A)(17) does not apply only to divorced parents.[9] As this

---

7. Appellant never raised this argument below, in brief, or at oral argument.

8. The majority ignores this reading of section 63–3–530(A)(17) as well as precedent requiring it, where possible, to construe statutes in a constitutional manner. See Ward, 343 S.C. at 19, 538 S.E.2d at 247 (holding this Court will not construe a statute to do that which is unconstitutional).

9. In relevant part, the statute at issue provides as follows:

The family court has exclusive jurisdiction: ...
(17) To make all orders for support run until further order of the court, except that orders for child support run until the child is eighteen years of age or until the child is married or becomes self-supporting, as determined by the court, whichever occurs first; or without further order, past the age of eighteen years if the child is

Court has noted in a case that dealt with support for an unemancipated disabled adult child, this statutory section "treats divorced parents the same as all other parents." *Riggs v. Riggs,* 353 S.C. 230, 236, 578 S.E.2d 3, 6 (2003). In *Riggs,* we therefore found no merit to the husband's equal protection argument. Accordingly, pursuant to *Riggs,* there can be no equal protection violation in the instant case because no such legislative classification is made by the applicable clause of section 63–3–530(A)(17).

For these reasons, I would hold that the family court's order should be affirmed.

Justice KITTREDGE, dissenting.

I join Chief Justice Toal in dissent in rejecting the equal protection challenge to section 63–3–530(A)(17) of the South Carolina Code (Supp.2008). I write separately because my view of the equal protection challenge and *Riggs v. Riggs,* 353 S.C. 230, 578 S.E.2d 3 (2003) differs from that of the Chief Justice. Because I would affirm the family court, I would address Appellant's remaining issue. I believe legislative intent concerning a parent's potential obligation to financially contribute to his or her child's college education includes a limitation to the cost of a South Carolina publicly supported college or university. I would, therefore, remand to the family court to determine if Appellant's contribution should be modified.

## I.

I join the Chief Justice in result as to the constitutionality of section 63–3–530(A)(17) (Supp.2008) (the successor statute to section 20–7–420(A)(17) of the South Carolina Code (Supp.

enrolled and still attending high school, not to exceed high school graduation or the end of the school year after the child reaches nineteen years of age, whichever is later; or *in accordance with a preexisting agreement or order to provide for child support past the age of eighteen years; or in the discretion of the court, to provide for child support past age eighteen where there are physical or mental disabilities of the child or other exceptional circumstances that warrant the continuation of child support beyond age eighteen for as long as the physical or mental disabilities or exceptional circumstances continue.*
(emphasis added).

2007)) insofar as it reflects legislative intent to authorize the family court to order parents to contribute to their child's college educational expenses under the *Risinger* [10] framework. *Risinger's* construction of legislative intent has stood the test of time, as the Legislature has amended many subsections of this jurisdictional statute through the intervening thirty years, but the "exceptional circumstances" language in subsection (A)(17) remains largely unchanged.

As Chief Justice Toal notes, the majority has ignored our issue preservation rules and redefined the class in a manner not presented "below, in brief, or at oral argument." (Toal, C.J., dissent at n.1). The majority so acknowledges in footnote 5, "[t]hough Appellant does not raise this specific classification, we note that this Court is asked, on appeal, to reconsider the validity of *Risinger*."

From a policy standpoint, the decision of the majority may be easily understood. A legislative policy of treating children of separated, divorced, or unmarried parents differently than children of married parents for purposes of requiring parental financial support to attend college is most assuredly a debatable proposition. Because no suspect classification is involved, however, the standard of review is deferential. Against an equal protection challenge implicating no suspect classification, a court must sustain the legislation if it is reasonably related to the legislative purpose sought to be achieved, members of the class are treated alike under similar circumstances, and the classification rests on some rational relationship. *German Evangelical Lutheran Church of Charleston v. City of Charleston*, 352 S.C. 600, 608, 576 S.E.2d 150, 154 (2003); *see also In re Marriage of Vrban*, 293 N.W.2d 198, 201 (Iowa 1980) (applying the rational relationship test as neither a suspect class nor a fundamental right are implicated); *In re Marriage of Kohring*, 999 S.W.2d 228, 232–33 (Mo.1999) (finding no equal protection violation because there was no involvement of a suspect class, no infringement of a fundamental right, and the existence of a rational relationship to legitimate state interest); *Childers v. Childers*, 89 Wash.2d 592, 575 P.2d 201, 209 (1978) (applying rational relationship test).

---

**10.** *Risinger v. Risinger,* 273 S.C. 36, 39, 253 S.E.2d 652, 653–54 (1979).

Although the policy rationale underlying section 63–3–530(A)(17) is subject to debate, I believe the statute survives an equal protection challenge. I thus vote to affirm the family court and uphold the statute on the basis that it satisfies the rational basis test. Having rejected the equal protection argument, I return to this Court's construction in *Risinger* of the "exceptional circumstances" statutory language. In this regard, I am especially mindful of the more than three decades that the Legislature has left the statutory interpretation of *Risinger* in place. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) (recognizing that "considerations of *stare decisis* weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation"). I would defer to the Legislature, and if the Legislature, as a policy matter, wants to overrule *Risinger's* statutory construction, they are certainly free to do so.

## II.

I respectfully disagree with Chief Justice Toal's view, as extrapolated from *Riggs v. Riggs*, 353 S.C. 230, 578 S.E.2d 3 (2003), that the Legislature intended to authorize the family court to order parents of intact families to contribute to the college educational expenses of their children. I do not read *Riggs* that broadly. *Riggs* dealt with a disabled adult child and targeted statutory language authorizing the family court to order "child support past age eighteen where there are physical or mental disabilities." *Id.* at 234, 578 S.E.2d at 5 (quoting from S.C.Code § 20–7–420(A)(17), the predecessor to § 63–3–530(A)(17)). The Court relied initially on "a common law duty of parental support for a child who has reached majority but is so physically or mentally disabled as to be unable to support herself." *Id.* at 234–35, 578 S.E.2d at 5. *Riggs* observed that "[w]here the disability prevents the child from becoming emancipated, the presumption of emancipation upon reaching majority is inapplicable." *Id.* at 235, 578 S.E.2d at 5.

The Court in *Riggs* next construed the language of section 20–7–420(A)(17) which authorized the family court to order "child support past age eighteen where there are physical or mental disabilities." *Id.* at 234–35, 578 S.E.2d at 5. *Riggs*

found the statutory provision "to be consistent with this common law duty and h[e]ld the family court is vested with jurisdiction to order child support for an unemancipated disabled adult child." *Id.* at 235, 578 S.E.2d at 5.

The issue of an unemancipated disabled adult child, with its common law underpinnings, is a far cry from a non-disabled adult child who wants to attend college. Imposing a duty of support in the former situation (through the common law and statutorily) is easily understandable. In the absence of a clear expression of legislative intent, I would not venture beyond *Risinger.* Accordingly, I would hold that legislative approval for the family court ordering a parent to contribute to his or her adult child's college educational expenses is limited to children of separated, divorced, or unmarried parents.

## III.

Because I reject Appellant's constitutional challenge and vote to affirm the family court, I would address Appellant's contention concerning the scope of his financial obligation. My assessment of legislative intent is that a parent's contribution should be determined and limited based on the cost of a South Carolina publicly supported college or university. Respondent suggests it is unfair to limit a child's selection to a South Carolina publicly supported college or university. I agree with Respondent on that point, but I view the issue differently. The issue, as I see it, is to what degree the Legislature has authorized the family court to compel the contribution of a parent to an adult child's college education. Given that *Risinger* discerned legislative intent from the "exceptional circumstances" provision, I find it incongruous that the Legislature would place no reasonable limitation on a parent's contribution.

The *Risinger* framework entails a host of limitations as a function of legislative intent, including consideration of the adult child's ability to work to defray college expenses, exhaustion of scholarships, availability of student loans, and the parent's ability to contribute. Regardless of a parent's wealth, the *Risinger* factors will apply in all cases. As I construe legislative intent, it matters not that a parent can easily afford the most expensive college education. Parents

will often allow an adult child to attend the college of his or her choice, but that is a voluntary decision free from governmental interference.[11] I do not believe the Legislature has authorized the family court to accept an adult child's college selection without regard to the costs. I believe a limitation to a South Carolina publicly supported college or university is in accord with legislative intent as set forth in *Risinger*.

## IV.

I respectfully dissent. I would affirm the order of the family court requiring Appellant, pursuant to section 63–3–530(A)(17), to contribute to the son's college educational expenses. But I would limit Appellant's contribution to what his pro rata assessment would have been at a South Carolina publicly supported college or university. Accordingly, I would remand to the family court to determine if Appellant's contribution should be modified.

---

11. A different situation is presented where parents, through a court approved separation agreement, agree to voluntarily provide support at a certain level to an adult child's college education expenses.