0535

Charles F. HANKS, Respondent, v. BLAIR MILLS, INC., and Commerce and Industry Insurance Company, Appellants.

(335 S. E. (2d) 91)

Court of Appeals

*William S. Davies, Jr.,* and *David G. Traylor, Jr.* of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellants.*

*C. Ben Bowen* of *Abrams, Bowen & Parham,* Greenville, *for respondent.*

Heard May 20, 1985.

Decided Aug. 8, 1985.

CURETON, Judge:

This is a workers' compensation case. In a decision affirmed by the full Industrial Commission and the circuit court, the single commissioner found the respondent Charles Hanks to be totally disabled from an occupational disease.

The commissioner ordered Hanks' employer, appellant Blair Mills, and its carrier, appellant Commerce and Industry Insurance Company, to pay benefits to Hanks. We affirm.

Hanks has a long history of employment in cotton mills and of exposure to cotton dust. In 1946, at the age of sixteen, Hanks began working at Abney Mills as a sweeper in the spinning department. He left in 1951 for two years of military service. Upon his return, he resumed his employment at Abney Mills and remained there until 1955.

For the next nine years, Hanks was employed in non-cotton related work.

In 1964, Hanks began employment with appellant Blair Mills as a sweeper and worked there in various capacities until he retired on disability in 1979, a period of nearly fifteen years. Over this period, except for the last two years, Hanks was exposed to one hundred percent cotton dust. During the last two years, he was exposed to a blend of polyester and cotton dust.

Hanks first noticed he was experiencing breathing problems in 1975 or 1976. He was examined by a doctor. Blair Mills administered pulmonary function tests to Hanks twice a year instead of the usual once a year in recognition of his respiratory problems.

In October 1978, Dr. Douglas, both the company doctor for Blair Mills and Hanks' personal doctor, wrote to Blair Mills that Hanks had chronic lung disease and recommended that he be moved to an area in the mill with a lower level of cotton dust. In May 1979, Hanks was hospitalized for respiratory problems for four days. When he returned to Blair Mills, his breathing problems worsened. Dr. Douglas determined that Hanks was permanently and totally disabled. Hanks retired on June 28, 1979.

Hanks filed a claim for disability benefits on December 3, 1980. The single commissioner found that Hanks was totally disabled from byssinosis and ordered Blair Mills and Commerce Industry and Insurance to pay benefits of $166.25 a week. Both the full commission and the circuit court affirmed and Blair Mills and Commerce Insurance appeal.

## I.

The appellants first contend the claim is barred by either Section 42-15-20 or Section 42-15-40 of the Code of Laws of South Carolina (1976).

### A. Section 42-15-20

The appellants argue that Hanks failed to comply with the statutory requirement that he give notice of his injury to his employer within ninety days after its occurrence. They point out that if the injury occurred on June 28, 1979, the date Hanks was diagnosed as permanently and totally disabled, Hanks did not give them notice of his injury until December 3, 1980, the date he filed the claim.

The Commission made these findings of fact:

> 6) That the employee, Charles F. Hanks . . . contracted the disease known as byssinosis while in the employ of Blair Mills and became disabled . . . on June 28, 1979 . . .
>
> 7) That the employer was notifed by the company doctor, Dr. Leonard W. Douglas, in a letter dated October 24, 1978.

The circuit court concurred in the findings that both Hanks and the company doctor provided the employer sufficient information to give the employer notice of Hanks' injury. We agree.

Section 42-15-20 requires that every injured employee or his representative give the employer notice of a job-related accident within ninety days after its occurrence. Generally, the injury is not compensable if timely notice is not given. In the case of occupational diseases, the "accident" occurs when the employee becomes disabled *and* could, through reasonable diligence, discover that his condition is a compensable one. *Drake v. Raybestos-Manhattan, Inc.*, 241 S. C. 116, 127 S. E. (2d) 288 (1962).

Section 42-15-20 provides no specific method of giving notice, the object being that the employer be actually put on notice of the injury so he can investigate it immediately after its occurrence and can furnish medical care for the employee in order to minimize the disability and his own liability. *Teigue v. Appleton Co.*, 221 S. C. 52, 68 S. E. (2d) 878 (1952).

■ We hold that the circuit court's concurrence in the Commission's finding that the employer was notified of the injury within the requirements of Section 42-15-20 is supported by substantial evidence. The employer received a letter dated October 24, 1978, from Dr. Douglas, the company doctor, stating that Hanks had chronic lung disease and recommending that he be transferred to an area having a dust level at or below permissible exposure limits. The company itself administered twice the number of OSHA-mandated pulmonary function tests to Hanks than it administered to its other employees because Hanks "didn't meet the FDV and FDC on our spirometers." Hanks discussed his breathing problems with the personnel director on several occasions. Finally, in June 1979, Dr. Douglas wrote the company that Hanks was totally disabled because of advanced chronic obstructive pulmonary disease. Based on Hanks' medical and employment history (which was known to the company) and the diagnosis, the company was put on notice that Hanks was suffering from byssinosis as early as October 24, 1978.

### B. Section 42-15-40

■ Section 42-15-40 requires that a claim for compensation be filed with the Industrial Commission within two years after an accident. In the case of occupational disease claims, the two-year period begins to run when the employee is "definitively diagnosed" as having an occupational disease *and* is notified of the diagnosis. S. C. Code Ann. Section 42-15-40 (1976).

On June 28, 1979, Dr. Douglas diagnosed Hanks as having "advanced chronic obstructive pulmonary disease." Hanks testified that he only later learned that the disease could be related to his occupation. That Hanks was unable to appreciate the significance of the June 28th diagnosis is consistent with both his own education and experience in life and the behavior of employees in general who contract occupational diseases. *See Drake v. Raybestos-Manhattan, Inc., supra.*

Hanks filed the claim for compensation on December 3, 1980, well within two years of being diagnosed as totally disabled in June, 1979. From any view of the evidence, it is clear that Hanks filed his claim well within the two-year statute of limitations.

## II.

The appellants next contend substantial evidence fails to support the commission's finding that Hanks contracted an occupational disease. They argue the evidence instead shows that Hanks' disease was caused by smoking a pack and a half of cigarettes a day for twenty-five years.

Upon review of the findings supporting an agency decision such as this one, this Court is limited to a determination of whether, among other things not relevant here, the Commission's findings, inferences, conclusions or decisions are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole· record." *Lowe v. Am-Can Transport Services, Inc.,* _____ S. C. _____, 324 S. E. (2d) 87 (Ct. App. 1984); S. C. Code Ann. Section 1-23-380(g)(5) (1976). In *Lark v. Bi-Lo, Inc.,* 276 S. C. 130, 276 S. E. (2d) 304 (1981), the South Carolina Supreme Court explained that the possibility that two inconsistent conclusions could be drawn from the evidence does not prevent an agency's finding from being supported by substantial evidence. A judgment upon which reasonable men might differ will not be set aside. *Id.* at 136, 276 S. E. (2d) 304. An agency's decision will be overturned only where there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based. *Id.* at 136, 276 S. E. (2d) 304.

Viewing the evidence against this standard of review, we hold that the commission's finding that Hanks contracted byssinosis is supported by substantial evidence. The deposition of Dr. T. Reginald Harris, a pulmonary specialist, was offered by the appellants. Dr. Harris concluded that Hanks suffered from "chronic obstructive pulmonary disease" most probably caused by smoking. Dr. Harris acknowledged the possibility of cotton dust-related disease but felt Hanks did not exhibit the syndrome frequently seen in individuals with byssinosis.

Hanks was also examined by Dr. Barnes who testified that despite Hanks' history of smoking, it was his opinion Hanks suffered from some byssinosis resulting from chronic exposure to cotton dust materials. He also testified that Hanks had chronic bronchitis which was probably caused by both smoking and byssinosis.

It is clear the evidence on the issue of causation of the disease was conflicting. There exists a reasonable probability that the facts are as related by Dr. Barnes. Consequently, we find substantial evidence in the record to support the finding that Hanks contracted the occupational disease byssinosis.

### III.

The appellants argue next that substantial evidence fails to support the finding that Hanks is totally disabled, but, if it does, the evidence fails to show that the entirety of the disability was caused by an occupational disease. They maintain first that substantial evidence shows that Hanks is able to engage in a number of occupations. They assert secondly that even if Hanks is totally disabled, part of the disability resulted from his smoking rather than the exposure to cotton dust.

Section 42-11-20 of the Code of Laws of South Carolina (1976) defines total disability as "the physical inability to perform work in any occupation." The issue of the extent of disability is a question of fact to be proved as any other fact is proved. *Arnold v. Benjamin Booth Co.*, 257 S. C. 337, 185 S. E. (2d) 830 (1971). This Court's function is not to resolve conflicts in the evidence but to determine from the record if substantial evidence supports the agency's finding. We find the Commission's finding that Hanks was totally disabled to be supported by substantial evidence.

Although Dr. Harris testified that Hanks could perform jobs requiring minimum physical activity such as bricklaying, his medical report following his examination of Hanks states that Hanks gets out of breath carrying out the garbage or taking a bath. Hanks himself testified to continual shortness of breath and tightness in his chest. Dr. Barnes testified that in his opinion Hanks was permanently and totally disabled. We are unable to state that there exists no reasonable probability that the facts could be as related by Dr. Barnes and Hanks. Thus, the finding must be sustained.

The appellants further argue that the court erred in failing to apply Section 42-11-90 of the Code of Laws of South Carolina (1976) requiring the apportionment of an award where the occupational disease is accelerated or aggravated by other non-compensable causes.

The evidence revealed that Hanks had smoked a pack and a half of cigarettes a day for years and that smoking can cause or contribute to chronic obstructive lung disease. Appellants, however, presented no evidence of the percentage of Hanks' disability that was caused by smoking. *Mizell v. Raybestos-Manhattan, Inc.*, 281 S. C. 430, 315 S. E. (2d) 123 (1984). We thus find no merit in the appellants' contention that the court should have apportioned the award based on Section 42-11-90.

## IV.

Appellants next contend Hanks did not suffer his last injurious exposure to cotton dust during Commerce Insurance's extension of coverage and therefore Commerce Insurance is not the liable carrier. Commerce Insurance points out the evidence shows that Commerce provided coverage to Blair Mills beginning on May 31, 1979. At that time, Hanks was out of work because of his illness. He returned on June 4, 1979 and remained until June 28, 1979 when he retired on total disability. Commerce Insurance argues that any cotton dust exposure during the 24 days of coverage could hardly have been injurious to Hanks. It points to the testimony of Dr. Harris that any exposure during this period would have caused no measurable change, difference or damage. We are not persuaded.

In *Glenn v. Columbia Silica Sand Company*, 236 S. C. 13, 19-20, 112 S. E. (2d) 711, 714 (1960), the Court noted:

> "In the case of occupational diseases, liability is ... assigned to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of the disability was of a kind contributing to the disease ... In the search for an indentifiable instant in time which can ... fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory."

It is uncontradicted that Hanks became incapacitated from performing his work, or disabled, on June 28, 1979. The carrier on the risk at the time was appellant Commerce Insurance. The employment with Blair Mills was of a kind contributing to the disease of byssinosis. Consequently, under the rule of *Glenn v. Columbia Silica Sand Company,*

*supra,* Commerce Insurance is the liable carrier.

Appellants filed a petition to argue against application of the *Glenn* rule because it is harsh and unfair to employers and carriers under whose employment or coverage the employee may have received only minor exposure to the disease-producing hazard. They urge instead that South Carolina adopt the apportionment rule under which liability is apportioned among all the employee's employers, and their carriers, whose conditions of employment were of the type contributing to the disease. We decline to adopt the apportionment rule because in summary, it would place an unduly harsh burden on an employee to notify, file a claim and prove a compensable injury against the many employers whose conditions of employment may have contributed to his injury.

## V.

Finally, appellants contend they were denied the opportunity to submit the medical report of Dr. Robert Galphin because the Commission closed the case without notifying them. Pursuant to Section 42-11-185 of the South Carolina Code of Laws (1976), the Commission ordered an independent examination of Hanks by Dr. Galphin. The order was filed on September 14, 1981. Dr. Galphin examined Hanks on October 21, 1981. The case was not closed until March 23, 1982. During this time, the appellants failed to depose Dr. Galphin.

We find on these facts that the appellants were not diligent in seeking to depose Dr. Galphin. Further under Section 42-11-185, the findings of Dr. Galphin were merely advisory. Thus, we discern no prejudice to the appellants.

## VI.

For all the reasons given herein, the judgment of the circuit court is affirmed.

SHAW and BELL, JJ., concur.