804 S.E.2d 269

Otis NERO, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Employer,

and

State Accident Fund, Carrier, Respondents.

Appellate Case No. 2015-001277
Opinion No. 5477

Court of Appeals of South Carolina.

Heard November 17, 2016
Filed March 29, 2017
Withdrawn, Substituted, and Refiled August 23, 2017

Stephen J. Wukela, of Wukela Law Firm, of Florence, for Appellant.

John Gabriel Coggiola, of Willson, Jones, Carter & Baxley, P.A., of Columbia, for Respondent.

MCDONALD, J.:

In this appeal from the Appellate Panel of the South Carolina Workers' Compensation Commission (the Appellate Panel), Otis Nero argues the Appellate Panel erred in failing to find (1) his employer, the South Carolina Department of Transportation (SCDOT), received adequate notice of his workplace accident and (2) he demonstrated reasonable excuse for—and SCDOT was not prejudiced by—any late formal notice. We reverse.

**Facts and Procedural History**

On June 20, 2012, Nero was working on a SCDOT road crew supervised by lead man Benjamin Durant and supervisor Danny Bostick. Nero's work, along with that of four or five other members of the crew, involved pulling a thirty-foot-long two-by-four "squeegee board" to level freshly poured concrete. At some point during the day, Bostick pulled Nero off the squeegee board temporarily because Nero appeared overheated. After a break, Nero returned to pulling the squeegee board.

At approximately 3:00 p.m., after finishing their work and cleaning up, the crew, including Nero, Durant, and Bostick, was talking and joking near the supervisor's truck when Nero lost consciousness and fell to the ground. Nero regained consciousness, stood up, told his supervisors he was fine, and drove home. Once home, Nero passed out again while sitting in his driveway. His wife immediately took him to the hospital where he was admitted and treated.

At the emergency room, Nero filled out a "History and Physical Report" and stated, "I passed out talking to my boss." Nero was initially seen by his primary care physician, Dr. Robert Richey. After a series of tests, Dr. Richey determined Nero had cervical stenosis and referred Nero to a neurosurgeon, Dr. William Naso, who performed a fusion surgery.

On July 9, 2012, prior to his surgery, Nero provided the human resources department with his "SCDOT Certification of Health Care Provider for Employee's Serious Health Condition (Family Medical Leave Act)" paperwork. Nero did not mention the squeegee incident in this submission, and under the section designated "approximate date condition commenced," Nero stated, "several years—neck and syncope." During his deposition, Nero testified he had not been treated for any back or neck problems prior to the squeegee board incident.

On January 6, 2014, Nero filed a request for a hearing, alleging he suffered injuries to his neck and shoulders while pulling the squeegee board on June 20, 2012. The single commissioner found Nero's claim compensable as an injury by accident that aggravated a preexisting cervical disc condition in Nero's neck. The single commissioner further determined Nero had a "reasonable excuse" for not formally reporting his work injury because (1) his lead man and supervisor were present and knew of pertinent facts surrounding the accident sufficient to indicate the possibility of a compensable injury, (2) the lead man and supervisor followed up with Nero, and (3) SCDOT was aware Nero did not return to work after the June 20, 2012 incident. Further, SCDOT was notified Nero was hospitalized and ultimately had neck surgery. Finally, the

single commissioner found SCDOT was not prejudiced by the late formal reporting of the injury.

SCDOT appealed to the Appellate Panel. The Appellate Panel reversed the single commissioner, finding that although Nero's supervisors witnessed him pass out, Nero never reported that the squeegee board accident involved a "snap" in his shoulders and neck. The Appellate Panel further found Nero's excuse for not formally reporting was not reasonable and SCDOT was prejudiced because Nero's late reporting deprived it of the opportunity to investigate the incident and whether Nero's work aggravated his preexisting cervical stenosis.

**Standard of Review**

 The Administrative Procedures Act (APA) establishes the standard for our review of Appellate Panel decisions. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Under the APA, this court can reverse or modify the decision of the Appellate Panel when the substantial rights of the appellant have been prejudiced because "the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010); *see also* S.C. Code Ann. § 1–23–380(5)(d)–(e) (Supp. 2016). "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct. App. 2006) (quoting *S.C. Dep't of Motor Vehicles v. Nelson*, 364 S.C. 514, 519, 613 S.E.2d 544, 547 (2005)).

 "Statutory interpretation is a question of law subject to de novo review." *Transp. Ins. Co. & Flagstar Corp.*, 389 S.C. at 428, 699 S.E.2d at 689. "The construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Id.* (quoting *Dunton v. S.C. Bd. of Exam'rs In Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987) (citations omitted)). However, workers' compensation

statutes are to be liberally construed in favor of coverage to serve the beneficent purpose of the Workers' Compensation Act; "only exceptions and restrictions on coverage are to be strictly construed." *James v. Anne's Inc.*, 390 S.C. 188, 198, 701 S.E.2d 730, 735 (2010). Because the issue of timely notice is a jurisdictional question, "the [c]ourt may take its own view of the preponderance of the evidence." *Shatto v. McLeod Reg'l Med. Ctr.*, 406 S.C. 470, 475, 753 S.E.2d 416, 419 (2013) (quoting *Wilkinson ex rel. Wilkinson v. Palmetto State Transp. Co.*, 382 S.C. 295, 299, 676 S.E.2d 700, 702 (2009)); *Mintz v. Fiske-Carter Constr. Co.*, 218 S.C. 409, 413, 63 S.E.2d 50, 52 (1951) (reversing award of compensation and noting hearing commissioner awarded compensation without discussion of "the jurisdictional defense of timely notice.").

**Law and Analysis**

### I. Adequate Notice

 Nero argues the Appellate Panel erred when it found SCDOT did not receive adequate notice under section 42–15–20(A) of the South Carolina Code (2015). We agree.

 Section 42–15–20 sets forth the requirement that an employee provide timely notice of an accident to an employer, stating, in pertinent part:

(A) Every injured employee or his representative immediately shall on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a notice of the accident and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the terms of this title prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative, had knowledge of the accident or that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity or the fraud or deceit of some third person.

(B) Except as provided in subsection (C), no compensation shall be payable unless such notice is given within ninety days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the commis-

sion for not giving timely notice, and the commission is satisfied that the employer has not been prejudiced thereby. "Section 42–15–20 requires that every injured employee or his representative give the employer notice of a job-related accident within ninety days after its occurrence." *Bass v. Isochem,* 365 S.C. 454, 472–73, 617 S.E.2d 369, 379 (Ct. App. 2005); *see also McCraw v. Mary Black Hosp.,* 350 S.C. 229, 237, 565 S.E.2d 286, 290 (2002) ("Pursuant to S.C. Code Ann. § 42–15–20 (1985), notice to the employer must be given within 90 days after the occurrence of the accident upon which the employee is basing her claim."). "Generally, the injury is not compensable unless notice is given within ninety days." *Bass,* 365 S.C. at 473, 617 S.E.2d at 379. "The burden is upon the claimant to show compliance with the notice provisions of section 42–15–20." *Id.*; *Lizee v. S.C. Dep't of Mental Health,* 367 S.C. 122, 127, 623 S.E.2d 860, 863 (Ct. App. 2005) ("The claimant bears the burden of proving compliance with these notice requirements.") "Section 42–15–20 provides no specific method of giving notice, the object being that the employer be actually put on notice of the injury so he can investigate it immediately after its occurrence and can furnish medical care for the employee in order to minimize the disability and his own liability." *Hanks v. Blair Mills, Inc.,* 286 S.C. 378, 381, 335 S.E.2d 91, 93 (Ct. App. 1985). The provision for notice shall be liberally construed in favor of claimants. *See Etheredge v. Monsanto Co.,* 349 S.C. 451, 458, 562 S.E.2d 679, 683 (Ct. App. 2002) (reiterating "the liberal construction our Supreme Court requires of workers' compensation provisions for notice."). In *Etheredge,* this court concluded "notice is adequate, when there is some knowledge of accompanying facts connecting the injury or illness with the employment, and signifying to a reasonably conscientious supervisor that the case might involve a potential compensation claim." 349 S.C. at 459, 562 S.E.2d at 683; *contra Sanders v. Richardson,* 251 S.C. 325, 328, 162 S.E.2d 257, 258 (1968) (explaining that just because an employer has knowledge of the fact that an employee becomes ill while at work "does not necessarily, of itself, serve the employer with notice that such illness constituted or resulted in a compensable injury"). The purpose of the notice provision "is at least twofold; first, it affords protection of the employer in order that he may investigate the facts and

question witnesses while their memories are unfaded, and second, it affords the employer opportunity to furnish medical care of the employee in order to minimize the disability and consequent liability upon the employer." *Mintz*, 218 S.C. at 414, 63 S.E.2d at 52.

Our review of the record confirms Nero never formally reported his injury to his employer. Nero was able to communicate with SCDOT because he submitted the necessary paperwork for benefits under the Family and Medical Leave Act [1] (FMLA). As Nero has not alleged any mental condition, physical issue, or third party prevented his formal reporting, we must determine whether SCDOT had knowledge of Nero's accident pursuant to section 42–15–20(A).

Nero submits the following facts in support of his argument that SCDOT had adequate notice of his workplace injury. On June 20, 2012, Bostick was concerned about Nero due to both the heat and his age and temporarily pulled Nero off of the squeegee board. After finishing for the day, though while still on the clock, Nero lost consciousness and fell to the ground— Durant and Bostick both witnessed the incident. After regaining consciousness and driving home, Nero passed out a second time. His wife immediately took him to the hospital where he was admitted, treated by a neurosurgeon, and diagnosed with cervical stenosis. He underwent neck surgery approximately two months later. Durant and Bostick were both aware that Nero was hospitalized and had surgery. In fact, they spoke with Nero while he was in the hospital. Nero never returned to work thereafter.

SCDOT argues Nero omitted several crucial facts contrary to his argument that a reasonably conscientious manager should have been aware of a potential compensation claim. First, "and most importantly," SCDOT points to the "SCDOT Certification of Health Care Provider for Employee's Serious Health Condition (Family Medical Leave Act)" (Exhibit 1), signed by Nero and Dr. Richey and delivered to the human resources department on July 9, 2012.[2] Exhibit 1 states the

---

1. 29 U.S.C.A. §§ 2601–2654 (2009 & Supp. 2011).

2. Bostick testified that had he been aware of the contents of Exhibit 1, he would have further investigated the accident.

approximate date Nero's condition commenced was "several years—neck and syncope." [3] Next, SCDOT contends Nero never actually reported his injury to his employer, despite speaking to both Bostick and Durant while hospitalized. Finally, SCDOT remarks on the medical evidence in the record. In the "Patient Health History Questionnaire" Nero prepared and signed for Dr. Naso, Nero stated his problems were not related to his job and this was not a worker's compensation injury. Dr. Naso initially commented, "I do not think his syncope is related to cervical spine pathology." However, Dr. Richey testified Nero's preexisting cervical spine condition was aggravated by his pulling of the squeegee board and that this, along with Nero's work in the heat, caused the syncope.

At his deposition, Nero testified the injury to his upper back and shoulders was a result of pulling the squeegee over a concrete pad.

Q: And tell me what happened during that process of you pulling the squeegee board?

A: I got a pain in between pulling the squeegee board when they take someone off it that put more stress in there, due to whoever is left on the squeegee has got less to help pull it.

Q: Yes Sir.

A: But you also still got to keep going [be]cause if you don't keep going—you're going to blotch up. So I was doing that, I felt like a pressing like a, you know, snap back there between my shoulder and my neck. . . .

Q: Okay. Now did you tell him, "Hey Mr. Bostick, I—I think I've hurt my neck just now"?

A: No, I didn't tell him that.

Q: Okay, when he took you off, what did you do?

A: I just step out of the way, got off to see—out of the cement, took a little break, and then I went right back.

Nero further testified that while he was pulling the squeegee, he felt "like a bone snapped or something snapped—or popped." Nero spoke with Bostick and Durant while he was in

---

3. SCDOT failed to note that Exhibit 1 also indicated Nero required neck surgery and that his beginning date for incapacity was listed as June 20, 2012.

the hospital but did not report that he felt "a snap[ping], crackling, and popping sensation" in his neck. Nero testified he told Bostick, "I think he asked me what ... was wrong. I said I am in the hospital. I said ever since I fell out, I said, I've been here ever since."

Although Nero never formally reported his injuries to his supervisors, Durant and Bostick both witnessed Nero fall to the ground, unconscious, after completing the physically challenging squeegee board work. *See Hanks*, 286 S.C. at 381, 335 S.E.2d at 93 ("Section 42–15–20 provides no specific method of giving notice, the object being that the employer be actually put on notice of the injury so he can investigate it immediately after its occurrence and can furnish medical care for the employee in order to minimize the disability and his own liability."). Significantly, Durant's reason for not reporting Nero's incident to Bostick was that Bostick was "right there." Because our supreme court has long held that the statutory notice provision is to be liberally construed in favor of claimants, we find the Appellate Panel erred in reversing the single commissioner's determination that SCDOT received adequate notice under section 42–15–20(A). *See Etheredge*, 349 S.C. at 459, 562 S.E.2d at 683 (concluding "notice is adequate, when there is some knowledge of accompanying facts connecting the injury or illness with the employment, and signifying to a reasonably conscientious supervisor that the case might involve a potential compensation claim").

## II. Reasonable Excuse

Nero next contends the Appellate Panel erred in finding he failed to establish a "reasonable excuse" for any notice deficiency and that SCDOT was prejudiced by this lack of notice. We agree.

Section 42–15–20(B) provides in relevant part that "no compensation shall be payable unless such notice is given within ninety days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the commission for not giving timely notice, and the commission is satisfied that the employer has not been prejudiced thereby." Once reasonable excuse has been established, it is the employer's burden to demonstrate prejudice from the

absence of formal notice. *Lizee*, 367 S.C. at 129–30, 623 S.E.2d at 864. However, "lack of prejudice does not justify compensation unless the requirement of reasonable excuse is also satisfied." *Gray v. Laurens Mill*, 231 S.C. 488, 492, 99 S.E.2d 36, 38 (1957). When determining whether prejudice exists, the Appellate Panel should be cognizant that the notice requirement protects the employer by enabling it to "investigate the facts and question witnesses while their memories are unfaded, and . . . to furnish medical care [to] the employee in order to minimize the disability and consequent liability upon the employer." *Mintz*, 218 S.C. at 414, 63 S.E.2d at 52.

Here, Nero's reason for not formally reporting his workplace incident was that his supervisors were present when he lost consciousness. Moreover, Durant and Bostick talked with Nero while he was hospitalized and were aware of his treatment and subsequent surgery, as well as the fact that he never returned to work after his collapse. Further, as the single commissioner recognized, Durant testified he never reported the incident to his own supervisor, Bostick, because it happened in Bostick's presence.

Q: I'm looking at [these] instructions you guys got about injuries on the job. As the lead man, do you get to choose—you have some discretion in choosing what injuries to report and what injuries not to report?

A: Do we get—no. I don't care if it's—if it—whatever it is, it is, if it's small or whatever else.

Q: I mean, a guy hurts his thumb, you've got to report it?

A: If you hurt your thumb and you feel like you need medical attention, you need to go report it.

. . . .

Q: But do you have any responsibility as the lead man to report injuries?

A: Do I have any? Yes, if it happens right here with me, I have a responsibility to report it.

Q: What if I say, look here, lead man, it's just my thumb. Don't worry about it. I don't want to report it.

A: Well—

Q: Can you say, no, we're not going to tell the supervisor?

A: No, I am not going to do that because there's too much that [can] come back and bite you.

Q: All right. Well, let me ask you, when [Nero] passed out that day, did you tell your supervisor about it?
A: He was right there.

. . . .

Q: Safe to say, after that day, when you knew that Nero had passed out, you felt like that it had been reported wherever it needed to be reported on the count of the fact that your supervisor was standing right there?
A: Well, not only that, I mean, being real, it probably done got back to whoever it need[ed] to get back to when he was out of work.

In reversing the single commissioner's finding that Nero provided a "reasonable excuse" for not formally reporting his work injury, the Appellate Panel found:

Although Claimant's supervisors witnessed Claimant's syncope episode, Claimant never reported the alleged accident from pulling the squeegee board, which was the basis of his claim. Claimant was given several opportunities to report his work accident and even submitted FMLA paperwork ... indicating that his problem lasted for several years instead of requesting workers' compensation.

■■■ Although Nero failed to give SCDOT formal notice, his excuse was reasonable because his supervisors were both present at the time of his injury and were aware of his treatment. In fact, Durant's reason for not reporting Nero's incident to Bostick was that Bostick was "right there" during the incident. The preponderance of the evidence in the record does not support the Appellate Panel's finding that Nero presented no "reasonable excuse" for failing to provide timely notice pursuant to section 42–15–20(B). Further, because SCDOT was aware Nero never returned to work following the June 2012 syncopal episode and knew of his hospitalization and surgical treatment, no prejudice can be established.

## Conclusion

Based on the foregoing analysis, the decision of the Appellate Panel is

**REVERSED.**

LOCKEMY, C.J., and KONDUROS, J., concur.