MCDONALD, J.:
**395 Otis Nero lost consciousness and fell to the ground in the presence of his two immediate supervisors while working on a **396 South Carolina Department of Transportation (SCDOT) road crew. Nero argues the Appellate Panel of the Workers' Compensation Commission erred in reversing the Single Commissioner's findings that (1) SCDOT received adequate notice of his workplace accident and (2) Nero demonstrated reasonable excuse for-and SCDOT was not prejudiced by-Nero's late formal notice. Upon our prior review of Nero's arguments, we considered the question of timely notice as *146 a jurisdictional issue and applied a de novo standard of review in reversing the Appellate Panel decision. Nero v. S.C. Dep't of Transp. , 420 S.C. 523, 804 S.E.2d 269 (Ct. App. 2017). Our supreme court granted SCDOT's petition for a writ of certiorari and reversed, reiterating that "timely notice under section 42-15-20 is not a jurisdictional determination, and must be reviewed under the substantial evidence standard." Nero v. S.C. Dep't of Transp. , 422 S.C. 424, 812 S.E.2d 735 (2018). We now reverse the Appellate Panel because the substantial evidence in the record does not support its findings that Nero failed to provide SCDOT with adequate notice of his workplace injury or that SCDOT was prejudiced by Nero's late formal notice.
Facts and Procedural History
On June 20, 2012, Nero was working on a SCDOT road crew supervised by lead man Benjamin Durant and supervisor Danny Bostick. Nero's work, along with that of four or five other members of the crew, involved pulling a thirty-foot-long two-by-four "squeegee board" to level freshly poured concrete. At some point during the day, Bostick pulled Nero off the squeegee board temporarily because Nero appeared overheated. After a break, Nero returned to pulling the squeegee board.
At approximately 3:00 p.m., after finishing the day's work and cleaning up, the crew, including Nero, Durant, and Bostick, were talking and joking near the supervisor's truck when Nero lost consciousness and fell to the ground. Nero regained consciousness, stood up, told his supervisors he was fine, and drove home. Once home, Nero passed out again in his driveway. His wife immediately took him to the hospital where he was admitted, diagnosed with cervical stenosis, and treated by a neurosurgeon.
**397 While at the emergency room, Nero filled out a "History and Physical Report" stating in part, "I passed out talking to my boss." Nero was initially seen by his primary care physician, Dr. Robert Richey. After a series of tests, Dr. Richey determined Nero had cervical stenosis and referred Nero to a neurosurgeon, Dr. William Naso, who performed a fusion surgery.
On July 9, 2012, prior to his surgery, Nero provided the employer's human resources department with his "SCDOT Certification of Health Care Provider for Employee's Serious Health Condition (Family Medical Leave Act)" paperwork. Nero did not specifically mention a neck "popping" incident with the squeegee board in this submission, but did report that he required neck surgery. Under the section designated "approximate date condition commenced," Nero wrote, "several years-neck and syncope."
On January 6, 2014, Nero filed a request for a hearing, alleging he suffered injuries to his neck and shoulders while pulling the squeegee board on June 20, 2012. The single commissioner found Nero's claim compensable as an injury by accident that aggravated a preexisting cervical disc condition in Nero's neck. The single commissioner further determined Nero had a "reasonable excuse" for not formally reporting his work injury because (1) his lead man and supervisor were present and knew of pertinent facts surrounding the accident sufficient to indicate the possibility of a compensable injury, (2) the lead man and supervisor followed up with Nero, and (3) SCDOT was aware Nero did not return to work after the June 20, 2012 incident. Further, SCDOT was notified Nero was hospitalized and ultimately had neck surgery. Finally, the single commissioner found SCDOT was not prejudiced by the late formal reporting of the injury.
SCDOT appealed to the Appellate Panel. The Appellate Panel reversed the single commissioner, finding that although Nero's two immediate supervisors witnessed him collapse, Nero never reported that an incident with the squeegee board involved a "snap" in his shoulders and neck. The Appellate Panel further found Nero's excuse for not formally reporting was not reasonable and SCDOT was prejudiced because Nero's late reporting deprived it of the opportunity to investigate **398 the incident and whether Nero's work aggravated any preexisting cervical stenosis.
Standard of Review
The Administrative Procedures Act (APA) establishes the standard for our review of Appellate Panel decisions.
*147 Lark v. Bi-Lo, Inc. , 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Under the APA, this court may reverse or modify the decision of the Appellate Panel when the substantial rights of the appellant have been prejudiced because "the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund , 389 S.C. 422, 427, 699 S.E.2d 687, 689-90 (2010) ; see also S.C. Code Ann. § 1-23-380(5)(d)-(e) (Supp. 2016). "The Appellate Panel is the ultimate fact finder in workers' compensation cases, and if its findings are supported by substantial evidence, it is not within our province to reverse those findings." Mungo v. Rental Unif. Serv. of Florence, Inc. , 383 S.C. 270, 279, 678 S.E.2d 825, 829-30 (Ct. App. 2009). "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." Taylor v. S.C. Dep't of Motor Vehicles , 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct. App. 2006) (quoting S.C. Dep't of Motor Vehicles v. Nelson , 364 S.C. 514, 519, 613 S.E.2d 544, 547 (2005) ).
Law and Analysis
I. Adequate Notice
Nero argues the Appellate Panel erred when it found SCDOT did not receive adequate notice under section 42-15-20(A) of the South Carolina Code (2015). We agree.
Section 42-15-20 sets forth the requirement that an employee provide timely notice of an accident to an employer, stating, in pertinent part:
(A) Every injured employee or his representative immediately shall on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the **399 employer a notice of the accident and the employee shall not be entitled to physician's fees nor to any compensation which may have accrued under the terms of this title prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative, had knowledge of the accident or that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity or the fraud or deceit of some third person.
(B) Except as provided in subsection (C), no compensation shall be payable unless such notice is given within ninety days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the commission for not giving timely notice, and the commission is satisfied that the employer has not been prejudiced thereby.
" Section 42-15-20 requires that every injured employee or his representative give the employer notice of a job-related accident within ninety days after its occurrence." Bass v. Isochem , 365 S.C. 454, 472, 617 S.E.2d 369, 379 (Ct. App. 2005) ; see also McCraw v. Mary Black Hosp. , 350 S.C. 229, 237, 565 S.E.2d 286, 290 (2002) ("Pursuant to S.C. Code Ann. § 42-15-20 (1985), notice to the employer must be given within 90 days after the occurrence of the accident upon which the employee is basing her claim."). "Generally, the injury is not compensable unless notice is given within ninety days." Bass , 365 S.C. at 473, 617 S.E.2d at 379. "The burden is upon the claimant to show compliance with the notice provisions of section 42-15-20." Id. ; Lizee v. S.C. Dep't of Mental Health , 367 S.C. 122, 127, 623 S.E.2d 860, 863 (Ct. App. 2005) ("The claimant bears the burden of proving compliance with these notice requirements.").
" Section 42-15-20 provides no specific method of giving notice, the object being that the employer be actually put on notice of the injury so he can investigate it immediately after its occurrence and can furnish medical care for the employee in order to minimize the disability and his own liability." Hanks v. Blair Mills, Inc. , 286 S.C. 378, 381, 335 S.E.2d 91, 93 (Ct. App. 1985). Satisfaction of the notice provision should be liberally construed in favor of claimants.
**400 Mintz v. Fiske-Carter Constr. Co. , 218 S.C. 409, 414, 63 S.E.2d 50, 52 (1951) ; Etheredge v. Monsanto Co. , 349 S.C. 451, 458, 562 S.E.2d 679, 683 (Ct. App. 2002). In Etheredge , this *148 court concluded "notice is adequate, when there is some knowledge of accompanying facts connecting the injury or illness with the employment, and signifying to a reasonably conscientious supervisor that the case might involve a potential compensation claim." 349 S.C. at 459, 562 S.E.2d at 683 ; contra Sanders v. Richardson , 251 S.C. 325, 328, 162 S.E.2d 257, 258 (1968) (explaining that just because an employer has knowledge of the fact that an employee becomes ill while at work "does not necessarily, of itself, serve the employer with notice that such illness constituted or resulted in a compensable injury").
We agree with SCDOT that Nero never formally reported the mechanics of his injury to his employer. However, the undisputed evidence in the record demonstrated SCDOT had adequate notice within the statutory requirement. On the day of the incident, Bostick became concerned about Nero and temporarily pulled him off of the squeegee board work.[1] Later that day, as the crew was cooling down and preparing to leave the job site, Nero lost consciousness and fell to the ground. Durant and Bostick both witnessed this. Both men called Nero while he was in the hospital, and both were aware he needed to have neck surgery. Both were aware that Nero did not return to work at SCDOT following his surgery, and Nero filled out the necessary leave paperwork through SCDOT's human resources department.
Significantly, the undisputed documentary evidence in the record further established notice. As early as July 13, 2012, SCDOT received written notification from Nero's family doctor, Richey, that Nero had been out of work since the date of his collapse and needed neck surgery. In July and August 2012, SCDOT received correspondence from Florence Neurosurgery and Spine confirming Dr. Naso was treating Nero for cervical radiculopathy. SCDOT corresponded with the medical provider in November 2012 regarding whether Nero would be able to return to work. There is simply no support in the **401 record for the Appellate Panel's finding that SCDOT lacked knowledge of Nero's workplace injury-or of the cervical problems for which he was being treated-for purposes of section 42-15-20(A).
SCDOT argues Nero omitted several crucial facts contrary to his argument that a reasonably conscientious manager should have been aware of a potential compensation claim. First, "and most importantly," SCDOT points to the "SCDOT Certification of Health Care Provider for Employee's Serious Health Condition (Family Medical Leave Act)" form (Exhibit 1), signed by Nero and Dr. Richey and delivered to the human resources department in July 2012.[2] Exhibit 1 states the approximate date Nero's condition commenced was "several years-neck and syncope."[3] SCDOT contends Nero never actually reported an "injury," despite his conversations with both Bostick and Durant while hospitalized. SCDOT further remarks on the medical evidence in the record, however, the medical opinions it references address causation, not notice.[4]
**402 *149 At his deposition, Nero testified the injury to his upper back and shoulders was a result of pulling the squeegee over a concrete pad.
Q: And tell me what happened during that process of you pulling the squeegee board?
A: I got a pain in between pulling the squeegee board when they take someone off it that put more stress in there, due to whoever is left on the squeegee has got less to help pull it.
Q: Yes Sir.
A: But you also still got to keep going [be]cause if you don't keep going-you're going to blotch up. So I was doing that, I felt like a pressing like a, you know, snap back there between my shoulder and my neck. ...
Q: Okay. Now did you tell him, "Hey Mr. Bostick, I-I think I've hurt my neck just now"?
A: No, I didn't tell him that.
Q: Okay, when he took you off, what did you do?
A: I just step out of the way, got off to see-out of the cement, took a little break, and then I went right back.
Nero further testified that while he was pulling the squeegee, he felt "like a bone snapped or something snapped-or popped." Nero spoke with Bostick and Durant while he was in the hospital but did not tell them he felt "a snap[ping], crackling, and popping sensation" in his neck. Nero testified he told Bostick, "I think he asked me what ... was wrong. I said I am in the hospital. I said ever since I fell out, I said, I've been here ever since."
Supervisor Bostick's deposition testimony is more illustrative of SCDOT's notice. With regard to Nero's "Family Medical Leave Act" form completed in part by Dr. Richey, Nero's counsel asked:
Q: You haven't ever seen [the SCDOT FMLA leave form], but you would agree with me that by July of 2012-this document is dated July the 9th of 2012, I think-yeah, July the 9th. By July the 9th, DOT was aware that Mr. Nero had been out of work since June the 20th and that he had to have neck surgery?
A: Would I have known that?
**403 Q: No. No. I'm asking if you agree with me that the Department of Transportation knew that.
A: I don't know, because I don't know what paperwork he passed on to get to that point.
Q: Fair enough. Well, I got this document from the Department of Transportation.
A: Right.
Q: So - -
A: But I wouldn't have known.
Q: I'm-well, you know. I'm not asking what you knew. I'm asking whether you would agree with me that, given this document, the Department of Transportation would have known that.
[Objection to the form].
Q: Go ahead and answer.
A: That they would have known something then?
Q: Yeah.
A: I guess they would have start[ed] doing their investigation.
Q: Okay. Do you know whether they did start doing an investigation at that point?
A: No, I don't. Like I said, the only-the only thing we ever heard of this is whenever that initial call was made, and whoever they talked to, I wouldn't [know] all that. The only thing I knew, Greg, my boss, called me in and asked me about the situation.
Bostick testified that he provided a written statement over a year prior to his March 2014 deposition in response to a call from his own supervisor. Bostick elaborated, "The only time I ever wrote anything, when they-we-it was brought to our attention that he called the department to say he got hurt on the job, so then that's when our safety guy-district safety guys started investigating what's going on, trying to find out *150 was this eligible that happened, when it happened, whatever." Although Bostick's written statement is undated, a file notation of 2012-4525 appears at the top of the document.
Nero's situation is a far cry from that of the auto body paint technician who reported to his employer that he was "pretty sore" and "must have hurt [himself]" in **404 Hartzell v. Palmetto Collision, LLC , 415 S.C. 617, 620, 785 S.E.2d 194, 195 (2016). The Hartzell petitioner did not seek immediately seek medical care, and he ended his employment approximately one month after this conversation because "business was slow." Id. at 620, 785 S.E.2d at 196. Over one year later, Hartzell filed a claim alleging a partial permanent injury to his back. Id. Although both the single commissioner and the Workers' Compensation Commission determined Hartzell "reported his work-related injury to Employer within the requisite time" as required by 42-14-20, this court reversed the Commission's notice finding. Id. at 621, 785 S.E.2d at 196.
Our supreme court reversed the court of appeals' finding of a notice failure in Hartzell , explaining, "[w]hile reasonable minds could have reached a different conclusion based on the record, we must not engage in fact-finding that would disregard the Commission's factual finding on these issues." Id. at 623, 785 S.E.2d at 197. There, the employer, while not denying a conversation with the employee may have occurred, testified it did not "ring a bell." Id. at 620, 785 S.E.2d at 196. In Hartzell , the substantial evidence of notice was this forgotten conversation-with no seeking of immediate medical care or correspondence between the treating physicians and employer prior to the claimant's filing of a Form 50. Id. at 623, 785 S.E.2d at 197.
Conversely, here, as the single commissioner's order explained, the "evidence of the record reveals that the employer was aware that the Claimant was in the hospital and that he was being treated by a neurosurgeon for cervical radiculopathy. (See Plaintiff's Exhibits 1-5). In fact, the employer wrote the neurosurgeon for his views as to the Claimant's work ability in November, 2012. (Plaintiff's Exhibit 5)." In sum, the substantial evidence in this record simply does not support the Appellate Panel's finding that SCDOT lacked adequate notice of Nero's workplace injury under section 42-15-20(A). See Etheredge , 349 S.C. at 459, 562 S.E.2d at 683 (concluding "notice is adequate, when there is some knowledge of accompanying facts connecting the injury or illness with the employment, and signifying to a reasonably conscientious supervisor that the case might involve a potential compensation claim").
**405 II. Reasonable Excuse
Nero next contends the Appellate Panel erred in finding he failed to establish a "reasonable excuse" for the formal notice deficiency and that SCDOT was prejudiced by this lack of notice. We agree.
Section 42-15-20(B) provides in relevant part that "no compensation shall be payable unless such notice is given within ninety days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the commission for not giving timely notice, and the commission is satisfied that the employer has not been prejudiced thereby." Once reasonable excuse has been established, it is the employer's burden to demonstrate prejudice from the absence of formal notice. Lizee , 367 S.C. at 129-30, 623 S.E.2d at 864. However, "lack of prejudice does not justify compensation unless the requirement of reasonable excuse is also satisfied." Gray v. Laurens Mill , 231 S.C. 488, 492, 99 S.E.2d 36, 38 (1957). When determining whether prejudice exists, the Appellate Panel should be cognizant that the notice requirement protects the employer by enabling it to "investigate the facts and question witnesses while their memories are unfaded, and ... to furnish medical care [to] the employee in order to minimize the disability and consequent liability upon the employer." Mintz , 218 S.C. at 414, 63 S.E.2d at 52.
Here, Nero's reason for not formally reporting his workplace incident was that his supervisors were present when he lost consciousness and he was hospitalized the same day of the incident. Further, as the single commissioner recognized, Nero's lead man, *151 Durant, testified he never reported the incident to his own supervisor, Bostick, because Bostick was "right there."
Q: I'm looking at [these] instructions you guys got about injuries on the job. As the lead man, do you get to choose-you have some discretion in choosing what injuries to report and what injuries not to report?
A: Do we get-no. I don't care if it's-if it-whatever it is, it is, if it's small or whatever else.
Q: I mean, a guy hurts his thumb, you've got to report it?
**406 A: If you hurt your thumb and you feel like you need medical attention, you need to go report it.
....
Q: But do you have any responsibility as the lead man to report injuries?
A: Do I have any? Yes, if it happens right here with me, I have a responsibility to report it.
Q: What if I say, look here, lead man, it's just my thumb. Don't worry about it. I don't want to report it.
A: Well-
Q: Can you say, no, we're not going to tell the supervisor?
A: No, I am not going to do that because there's too much that [can] come back and bite you.
Q: All right. Well, let me ask you, when [Nero] passed out that day, did you tell your supervisor about it?
A: He was right there.
....
Q: Safe to say, after that day, when you knew that Nero had passed out, you felt like that it had been reported wherever it needed to be reported on the count of the fact that your supervisor was standing right there?
A: Well, not only that, I mean, being real, it probably done got back to whoever it need[ed] to get back to when he was out of work.[5]
In reversing the single commissioner's finding that Nero provided a "reasonable excuse" for not formally reporting his work injury, the Appellate Panel found:
Although Claimant's supervisors witnessed Claimant's syncope episode, Claimant never reported the alleged accident from pulling the squeegee board, which was the basis of his claim. Claimant was given several opportunities to report his work accident and even submitted FMLA paperwork ... indicating that his problem lasted for several years instead of requesting workers' compensation.
**407 Although Nero failed to give SCDOT formal notice, his excuse was reasonable because his supervisors were both present at the time of his injury and were aware of his treatment. SCDOT was aware Nero never returned to work following the June 2012 episode and knew of his hospitalization and need for neck surgery well within the ninety-day notice window. Within a few weeks of Nero's collapse, SCDOT was aware of Nero's treatment by a qualified neurosurgeon, that he was having neck surgery, and that he would be unable to return to work. At some point long before Nero filed his Form 50, SCDOT was conducting its own investigation as to Nero's injury at the job site. Thus, the employer suffered no prejudice to either its ability to investigate or furnish medical care in order to minimize Nero's disability and its own liability. As the substantial evidence in the record does not support the contrary conclusions of the Appellate Panel, we reverse.
Conclusion
Based on the foregoing analysis, we reverse the decision of the Appellate Panel and reinstate the order of the single commissioner.
REVERSED.
LOCKEMY, C.J., and KONDUROS, J., concur.

Bostick explained in his deposition that although Nero never made any complaints to him about his ability to pull the squeegee board, he was concerned for Nero due to both the summer heat and Nero's age.

Bostick testified that had he been aware of the contents of Exhibit 1, he would have further investigated the accident. Nero received this form with his "paperwork from Human Resources," Dr. Richey completed a portion of the FMLA form, and it was returned to SCDOT.

However, SCDOT's own Question 4 and Nero's response provide additional context: "4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such relevant facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment): Have to have neck surgery." Nero's beginning date for the period of incapacity was listed as June 20, 2012 (the day he collapsed at the job site). As for Nero's possible return to work date, Dr. Richey noted on the form "For now he is out - after surgery we can estimate this 7/12/12."

It appears the Appellate Panel conflated the concept of notice with the evidentiary concept of an injured worker's proof of his claim. Still, we recognize that some of the evidence SCDOT submits in support of its argument that SCDOT lacked notice of the mechanism of Nero's injury may be relevant to both notice and causation. For example, in the medical history questionnaire Nero prepared and signed for Dr. Naso, Nero left blank this line: "Complaint Related to an Injury? _______ Workman's Compensation? _______." And Dr. Naso initially commented, "I do not think his syncope is related to cervical spine pathology." But Dr. Richey testified Nero's preexisting cervical spine condition was aggravated by his pulling of the squeegee board and that this, along with Nero's work in the heat, caused the syncope.

And we know, based on Bostick's own deposition testimony as to when he provided his statement to SCDOT, that "the district safety guys" and Bostick's own supervisor were investigating Nero's incident and injury at least a year prior to Nero's filing of the Form 50 on January 6, 2014.